Lourdes M. **SANTIAGO**, et al., Plaintiffs,

v.

**Trel LLOYD and Lupi's Enterprises, Inc., Defendants.**

No. Civ. 98–1414(JP).

United States District Court,
D. Puerto Rico.

Dec. 23, 1998.

Bamily López Ortiz, Puerto Nuevo, P.R., for plaintiff.

Pedro A. Delgado Hernández, O'Neill & Borges, Hato Rey, P.R., for defendant Trel Lloyd.

Enrique J. Mendoza Méndez, Mendoza & Bacó, San Juan, P.R., for defendant Lupi's Enterprises.

1. As discussed in the Court's Order granting reconsideration, there is a dispute as to whether

*OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. Introduction and Background

The Court has before it Co-defendant Trel Lloyd's ("Lloyd") Motion to Dismiss (**docket No. 5**) and Plaintiffs' Opposition to Defendants' Motion to Dismiss (docket No. 11). The Court previously entered Judgment (docket No. 14) dismissing Santiago's claims under Title VII of the Civil Rights Act of 1964 as time-barred, and declined to accept supplemental jurisdiction over Plaintiffs' claims under Puerto Rico law. On November 13, 1998, however, the Court granted Plaintiffs' Motion for Reconsideration, deciding that Plaintiffs had, in fact, presented sufficient evidence to create a triable issue of fact as to the timeliness of their claim. Therefore, the Court must now address Co-defendant Lloyd's Motion to Dismiss.

Plaintiffs are Lourdes M. Santiago ("Santiago"), her husband John Barton ("Barton"), and their conjugal partnership. Plaintiff Santiago is a Puerto Rican female who worked in the administrative office of Lupi's Enterprises, Inc. ("Lupi's") from approximately March 1994 until August of 1996.[1] Plaintiff Barton also worked at Lupi's, starting in November 1991. Plaintiffs bring claims for sex and national origin discrimination under Puerto Rico "Law 100," 29 L.P.R.A. § 146 (1959) and "Law 69," 29 L.P.R.A. § 1340 (1985), sexual harassment under "Law 17," 29 L.P.R.A. § 155 (1988) ("Law 17"), and under Title VII of the Civil Rights Act. Plaintiffs' claims under both Title VII and Puerto Rico law have been brought against Lupi's as well as against Lloyd personally. In addition, Plaintiffs assert a claim against Lloyd for defamation, claiming he spread unfounded rumors about an alleged affair between Santiago and Eduardo Figueroa ("Figueroa"), one of Lupi's stockholders.

## II. Plaintiffs' Allegations

In Plaintiffs' Complaint, they assert that during the time Santiago was employed at Lupi's, Co-defendant Lloyd was a 50% stock-

Plaintiff left her position on August 16 or August 29, 1996.

holder of Lupi's as well as its President. Santiago alleges that after she was hired at Lupi's, she developed a close, professional relationship with Lloyd and Figueroa. Santiago and Figueroa, who is also Puerto Rican, conversed in their native language, Spanish, while at the office. Lloyd, however, forbade the use of Spanish at the office, and was suspicious of Santiago and Figueroa's relationship.

Plaintiffs allege that Lloyd excessively used profane language and sexually charged expressions at the office and in front of Santiago, who objected to such language. In addition, Plaintiffs claim that Lloyd kept at the office and boasted about pornographic magazines and pictures of naked women. Allegedly, Lloyd made sexually explicit comments to and engaged in explicit descriptions of the female employees and customers at Lupi's. In addition to comments directed at women, Plaintiffs claim that Lloyd made derogatory remarks about Puerto Ricans, including, "I can't believe how dumb Puerto Ricans are!" Santiago claims she voiced her disapproval of Lloyd's comments and actions to him, as well as to Figueroa, who she asked to intervene in the situation. Lloyd's behavior, however, did not improve.

While Santiago was at Lupi's, Lloyd opened an additional Lupi's restaurant in Old San Juan and allegedly hired Sandra Acevedo into Santiago's position with a higher salary. After these events transpired, Plaintiffs were having dinner with Lloyd and his wife, Marisa, when Marisa allegedly said to Santiago that Lloyd had told her that Santiago was having an affair with Figueroa, which Santiago unequivocally denied. A few days later, in March 1996, Lloyd made an additional comment to Barton, which Plaintiffs believe implied that Santiago was having an affair with Figueroa. When Santiago confronted Lloyd about this comment, Lloyd said he was "tired" of her relationship with Figueroa, threw a drink at her, and told Barton that Santiago was fired.

Santiago did not leave Lupi's at that point, but claims that Figueroa called her and asked her to return. Santiago asserts that she agreed to return because she needed the money. At this time, the Lupi's Annual Board meeting was approaching, and according to Plaintiffs, Lloyd attempted to "buy" Santiago's vote in exchange for an increase in salary. Santiago then attempted to resign, but her resignation was not accepted by the Board of Directors. After a meeting with Lloyd where Plaintiffs claim Lloyd became critical of and offensive to Santiago, she received a letter written to the Board of Directors and signed by Lloyd stating that Santiago was no longer able to perform her duties at Lupi's. Santiago tendered her resignation letter that same day.

Plaintiffs assert that Lloyd created a hostile sexual working environment, retaliated against Santiago for complaining about his sexually hostile behavior, and discriminated against her on the basis of sex and national origin. Plaintiffs claim that Santiago was eventually forced to resign from her position at Lupi's because of Lloyd's behavior. Plaintiffs also point out that Lupi's had no sexual harassment policy or procedure at the time the incidents occurred, and did not take any remedial action to stop the alleged sexual harassment.

Lloyd's Motion to Dismiss seeks to dismiss all claims against Lloyd personally on three bases. First, Lloyd asserts that he cannot be held personally liable for sexual harassment under either Title VII or under Puerto Rico's anti-discrimination statutes. Second, he argues that if the Court dismisses Plaintiff Santiago's claims under Title VII and Puerto Rico law, the claims of her husband John Barton and the conjugal partnership should also be dismissed because they are contingent on Santiago's claim. Finally, Lloyd asserts that the defamation claim against Lloyd is time barred, and thus should be dismissed. The Court will examine these arguments in turn.

### III. Individual Liability under Title VII

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir.1991). The Court must accept as true the well-pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences therefrom in favor of the plaintiff. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). *But see Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987) (quoting *Snowden v. Hughes*, 321 U.S. 1, 10, 64 S.Ct. 397, 88 L.Ed. 497 (1944)).

In opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 22 (1st Cir.1991). Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim. *Id.* at 23 (citing *Correa–Martinez*, 903 F.2d at 52; *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989); *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957)). Plaintiff must set forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

Therefore, looking at Plaintiffs' allegations in the light most favorable to them, the Court must first determine whether or not they can sustain an action under Title VII against Co-defendant Lloyd in his personal capacity. Neither the First Circuit nor the Supreme Court has decided the issue of whether a Title VII plaintiff can maintain a suit against an individual in their personal capacity. *See Serapion v. Martinez*, 119 F.3d 982, 992–93 (1st Cir.1997) (citing *Scarfo v. Cabletron Systems*, Inc., 54 F.3d 931, 951–52 (1st Cir.1995) (declining to address the issue of individual liability)). The issue, however, has created a split among other circuits, with the majority finding no individual liability under Title VII.[2] Along with the First Circuit, the Third, Sixth, and Eighth Circuit Courts of Appeals have not ruled on the issue of individual liability. Because of a lack of guidance from the First Circuit on the issue, district courts within this Circuit have rendered conflicting opinions.[3]

In deciding to hold individuals liable for their acts of discrimination or harassment, courts have looked at the plain language of Title VII itself, *see Paroline v. Unisys Corp.*, 879 F.2d 100, 103 (4th Cir.1989), which defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ..., and any agent of such person ..." 42 U.S.C. § 2000e(b). As stated by the Court in *Iacampo v. Hasbro Inc.*, "Title VII is unambiguous, and a literal reading of the agent clause does not .... justify inquiry into legislative intent. To ignore the plain language of Title VII (and the ADA) is to set forth on uncertain, unmarked and forbidden judicial waters." *Iacampo v. Hasbro Inc.*, 929 F.Supp. 562, 572 (D.R.I. 1996) (citing *Tomka v. Seiler Corp.*, 66 F.3d

**2.** The Second, Seventh, Ninth, Tenth, Eleventh, and District of Colombia Circuit have determined that supervisors may only be held individually liable in their official capacities. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d Cir. 1995); *Williams v. Banning*, 72 F.3d 552, 553–55 (7th Cir.1995); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993); *Haynes v. Williams*, 88 F.3d 898, 900–01 (10th Cir.1996); *Cross v. Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.1995). The Fourth Circuit, however, has permitted individual supervisors to be held liable in their personal capacities when a supervisor "exercises significant control over the plaintiff's hiring firing or conditions of employment." *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989) (citations omitted), *rev'd in part, aff'd. in relevant part*, 900 F.2d 27 (4th Cir.1990) (en banc).

**3.** Some courts have found individual liability under Title VII, *see Iacampo v. Hasbro Inc.*, 929 F.Supp. 562, 571–72 (D.R.I.1996); *Weeks v. State of Maine*, 871 F.Supp. 515, 516–17 (D.Maine 1994); *Douglas v. Coca–Cola Bottling Co. of Northern England, Inc.*, 855 F.Supp. 518–20 (D.N.H.1994), while others have rejected individual liability, *see Hernandez v. Wangen*, 938 F.Supp. 1052, 1063–65 (D.Puerto Rico 1996); *Anonymous v. Legal Serv. Corp.*, 932 F.Supp. 49, 50–51 (D.Puerto Rico 1996); *Miller v. CBC Companies, Inc.*, 908 F.Supp. 1054, 1065 (D.N.H. 1995).

1295, 1319 (2d Cir.1995); *United States v. Flores,* 968 F.2d 1366, 1371 (1st Cir.1992)); *see also Douglas v. Coca–Cola Bottling Co. of Northern New England, Inc.,* 855 F.Supp. 518–20 (D.N.H.1994) (relying on plain language of statute) (citing *Lamirande v. Resolution Trust Corp.,* 834 F.Supp. 526, 528) (D.N.H.1993)). In addition, · Courts have looked to the remedial goals of Title VII in deciding to hold individuals liable. *See Weeks v. State of Maine,* 871 F.Supp. 515, 516–17 (D.Maine 1994) ("to effectuate [Title VII's] goals and purpose of eradicating the evils of employment discrimination, Title VII should be given a liberal construction.") (quoting *Lamirande,* 834 F.Supp. at 528).

On the other hand, courts that have found no individual liability under Title VII have looked to Title VII's overall language as well as its legislative history. *See Hernandez v. Wangen,* 938 F.Supp. 1052, 1064 (D.Puerto Rico 1996) ("As it had with other civil rights statutes such as section 1981, Congress could have included individuals like supervisors as potential liable parties.") (footnote omitted); *Tomka,* 66 F.3d at 1319 (Congress was concerned about protecting small businesses in its enactment of Title VII as the statute applies only to businesses with 15 or more employees); *Miller v. Maxwell's Int'l. Inc.,* 991 F.2d 583, 587 (9th Cir.1993) ("the obvious purpose of this agent provision was to incorporate respondeat superior liability into the statute.") *Miller,* 991 F.2d at 587.

This Court has previously addressed the question of individual liability under Title VII, and dismissed plaintiff's claim against defendant in his personal capacity because she presented "no arguments for allowing her [individual] claims .... to proceed." *Rivera Rodriguez v. Police Dept. of Puerto Rico,* 968 F.Supp. 783, 785 (D.Puerto Rico 1997) (Pieras, J.). In the instant case, Plaintiff argues that Lloyd can be held individually liable because he and Lupi's are "joint employers." As evidence of this "joint employer" relationship, Santiago points to a sworn statement attached to Co-defendant

Lupi's Motion to Dismiss (docket No. 7), in which Santiago discusses several instances in which Lloyd and Figueroa used the corporation as their "personal and private bank." [4] (Pls.' Opp'n. Def.'s Mot. Dismiss at 3).

A "joint employer" relationship exists when two entities 'share control of the employee to such an extent that they both function as an employer, even though they are operationally distinct.' " *Bonilla v. Liquilux Gas Corp.,* 812 F.Supp. 286, 289 (D.Puerto Rico 1993). The joint employer doctrine has been utilized in Title VII cases, and two separate business enterprises can be treated as a single employer for the purposes of Title VII liability if there is an "interrelation of operations, common management, centralized control of labor relations and common ownership." *Radio & Television Broadcast Technicians v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965); *see also Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico,* 929 F.2d 814, 820 n. 16 (1st Cir.1991) (incorporating joint employer doctrine into Title VII context). While Plaintiff's argument that Lloyd is a "joint employer" is creative, the doctrine does not appear to apply to the situation at hand. Here, the "joint employers" are not two business enterprises, but rather, are two individual stockholders and officers in a company that is a Co-defendant in this action.

The Court finds more persuasive Plaintiffs' argument that Lloyd is more than a mere "supervisor," but rather that "his control over the working conditions was direct and overwhelming as he was in control of the business. In other words, he was also an employer." (Pls.' Opp'n. Def.'s Mot. Dismiss at 3). This argument is better known as the "alter ego" theory, and has been advanced in other Title VII cases. Under the alter-ego doctrine, a supervisor may be held liable under Title VII as an "employer" when "the supervisor's role is more than that of a mere supervisor but is actually identical to

---

4. The Court notes that on a Motion to Dismiss pursuant to Rule 12(b)(6), it shall not look to matters outside the pleadings unless the motion is treated as a motion for summary judgment. Fed.R.Civ.P. 12(b)(6). In this case, the parties were not given a "reasonable opportunity to present all material made pertinent such a motion ...", and thus the Court will look only to Plaintiff's Complaint in ruling on Defendant's Motion. *Id.*

that of the employer." *Curcio v. Chinn Enterprises, Inc.*, 887 F.Supp. 190 (N.D.Ill.1995) (citing *Fabiszak v. Will County Bd. of Commissioners*, 94 C 1517, 1994 WL 698509 at *2–3 (N.D.Ill. Dec.12, 1994)).[5]

■ Looking at Plaintiffs' Complaint, they allege numerous facts that, if taken as true, indicate that Lloyd was more than a mere "supervisor." Plaintiffs' Complaint states that Lloyd is a 50% stockholder of Lupi's as well as the President of Lupi's. (Pls.' Compl. ¶ 11, 12). Plaintiffs' assert that one of the other stockholders, Figueroa, was seldom present at the office, and that Lloyd was always physically there "supervising" the business. (Pls.' Compl. ¶ 25). In addition, the third stockholder, Mike McTall, had distanced himself from Lupi's. (Pls.' Compl. ¶ 22). Lloyd supposedly took money from the business without telling his partners. (Pls.' Compl ¶ 38). Plaintiffs' allegations further indicate that Lloyd allegedly controlled the office and employees, as he took various actions to prevent Santiago from seeing her husband, Barton, such as changing Barton's shift and forcing Santiago to work on Saturday. (Pls.' Compl. ¶¶ 32, 36). Lloyd was also in charge of hiring employees, and hired Sandra Acevedo in Santiago's position, giving her a higher salary. (Pls.' Compl ¶¶ 42, 43).

These facts, taken together, indicate that Lloyd controlled the internal operations of the office, in addition to being the controlling shareholder and President of Lupi's. While Plaintiffs' allegations indicate that, at times, Figueroa overrode Lloyd's decisions, the facts taken in the light most favorable to Plaintiff show that Lloyd was, essentially, the main decision maker at Lupi's. *See id.* at 194 (individual held liable was "in all respects the actual employer because he was the controlling shareholder and the main decision maker, and in effect left no avenue for the employees to object to his misconduct.") Even when Santiago complained to Figueroa, her work situation did not change, and Lloyd's sexually hostile behavior escalated. For example, as described in Plaintiffs' Complaint, Lloyd threw a drink on her and attempted to force her to resign after she confronted him about spreading rumors of the alleged affair between Santiago and Figueroa.

The Court finds that under an alter-ego theory, Lloyd can effectively be considered the "employer" for the purposes of individual liability under Title VII. Therefore, Defendant's Motion to Dismiss on these grounds is hereby **DENIED**.

## IV. Individual liability Under Puerto Rico Law

■ Lloyd also seeks to dismiss the Puerto Rico law claims against him for sex and national origin discrimination under Law 100, as well as for sexual harassment under Law 17. Defendant claims that the purpose of the definition of "employer" under Puerto Rico anti-discrimination laws is to impose respondeat superior liability upon employers for the acts of their agents, and not upon their agents personally. Plaintiffs do not provide the Court with any specific arguments, aside from those presented in relation to Title VII, in support of their claim for individual liability under Puerto Rico law.

The Puerto Rico Supreme Court has not directly addressed the issue of individual liability under Puerto Rico's anti-discrimination statutes. *See Figueroa v. Mateco, Inc.*, 939 F.Supp. 106, 107 (D.Puerto Rico 1996). There are two cases from the District of Puerto Rico, however, that have rejected individual liability under Law 100 and Law 17. *See Id.* (rejecting individual liability for Law 100 claim) *Garcia Pantoja v. General Instruments, Inc.*, Civ. No. 94–2363, 1996 WL 790102 at *1 (D.Puerto Rico Oct.17, 1996) (rejecting individual liability for Law 17 claim). The *Figueroa* Court's analysis focused on the fact that the expansive definition of " 'employer' was intended to ensure that courts would impose respondeat superior liability upon employers for the acts of their agents, not upon the agents personally." [6] *Figueroa*, 939 F.Supp. at 107. The

---

**5.** The Court recognizes that the Seventh Circuit has essentially overruled the alter-ego theory in *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). However, the Court is not bound by the Seventh Circuit decision, and finds the district court's reasoning persuasive.

**6.** The definition of employer includes "any natural or artificial person employing laborers,

Court came to this conclusion by examining the use of this same definition of employer in the context of the Puerto Rico minimum wage law. *Id.* (quoting *Secretary of Labor v. Ibarra García*, 88 P.R.R. 494, 498 (1963) ("the purpose of .... including the chiefs, officials, managers, officers, administrators and others [in the definition of employer] is to make the employer responsible for their conduct.... That is why the actions of the appellant as manager of the partnership business do not give him the status of employer; the partnership is the one responsible for them."))

Absent case law from Puerto Rico courts to the contrary specifically addressing Laws 100 and 17, the Court finds the *Figueroa* Court's reasoning persuasive. The interpretation of "employer" by Puerto Rico courts rejects individual liability in the employment context. In addition, Plaintiffs have provided no support for their "alter ego" or "joint employer" theory under Puerto Rico law. Therefore, the Court hereby **DISMISSES** Plaintiffs' claims against Defendant Lloyd in his personal capacity under Law 100 and Law 17. In addition, as Title VII only permits affected employees to bring claims under Title VII, all claims by the conjugal partnership are hereby **DISMISSED.**[7] *See Paredes Figueroa v. Int. Air Services*, 662 F.Supp. 1202, 1204–05 (D.Puerto Rico 1987) (dismissing conjugal partnership's claim under the ADEA).

### V. Plaintiffs' Defamation Claim

The final basis for Defendant's Motion to Dismiss is that Plaintiffs did not bring their defamation claim within the one-year limitations period proscribed by Article 1868 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5298(2). Plaintiffs do not assert that their defamation claim was brought within the limitations period, but rather ask the Court to allow them to conduct discovery because "Lloyd's violent reactions and subsequent events that led to Santiago and Barton's

registrations, indicate the possibility of other instances in which Lloyd repeated the malicious rumor." (Pls.' Opp'n. Defs.' Mot. Dismiss at 5)

The Court first notes that under Puerto Rico law, the one-year statute of limitations period for a defamation claim begins to run when the aggrieved party learns of the alleged defamatory statement. *See Ojeda–Ojeda v. El Vocero*, 94 J.T.S. 131; 31 L.P.R.A. § 5298(2). In the instant case, Plaintiffs' Complaint states that Lloyd's alleged defamatory statements regarding a supposed affair between Santiago and Figueroa were related to Plaintiff Santiago in March 1996. This action was filed on April 20, 1998, and there are no claims of tolling of the limitations period.

"Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.1998) (citing *Street v.. Vose* 936 F.2d 38, 39 (1st Cir.1991); *Kali Seafood, Inc. v. Howe Corp.*, 887 F.2d 7, 9 (1st Cir.1989)). In this case, the Court finds that it is clear from the face of Plaintiffs' Complaint that their defamation action is time-barred. The Court is not persuaded by Plaintiffs' request for "discovery" regarding their own claim for defamation. The information supporting Plaintiffs' own claims of defamation is and should be in their own possession.

Plaintiffs' request for discovery is distinct from those instances, primarily jurisdictional challenges, in which limited discovery in response to a motion to dismiss is appropriate. Discovery may be allowed when there is a challenge to the Court's personal jurisdiction, *see Sunview Condominium Assoc. v. Flexel International, Ltd.*, 116 F.3d 962 (1st Cir.1997) (citations omitted), or to its subject matter jurisdiction, *see Blackburn v.*

---

workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person." 29 L.P.R.A. § 151(2).

**7.** The conjugal partnership cannot maintain an action separate from that of Santiago's action, and therefore, Barton's claims are dismissed along with Santiago's claims under Puerto Rico Law 100 and Law 17. *See Maldonado v. Banco Central*, 95 J.T.S. 48.

*United States,* 100 F.3d 1426, 1436 (9th Cir. 1996). Plaintiffs' defamation claim, however, is not analogous to the jurisdictional issues described above, and therefore, a "fishing expedition" to find another defamatory remark made by Defendant Lloyd to bring the claim within the limitation period is not appropriate. Thus, Plaintiffs' claims against Lloyd for defamation are hereby **DISMISSED WITH PREJUDICE.**

### VI. Conclusion

The Court finds that Co–Defendant Lloyd can be held personally liable under Title VII based on an alter-ego theory, and therefore, his Motion to Dismiss Plaintiffs' claims on this basis is hereby **DENIED.** Plaintiffs' claims under Puerto Rico Law 100 and 17, however, do not provide for individual liability, and thus, Defendant's Motion is **GRANTED.** In addition, Co–Plaintiff Barton and the conjugal partnership cannot sustain any action against Defendant as Title VII does not provide for such a claim, and because Santiago's claim is dismissed under Puerto Rico law. Finally, Plaintiffs' defamation action is time-barred, as it was brought after the expiration of the one-year limitations period, and thus Defendant's Motion to dismiss the defamation claim is **GRANTED .**

**IT IS SO ORDERED.**