Fernando Rochet CANABAL, Plaintiff,

v.

ARAMARK CORPORATION,
et al., Defendant.

No. Civ. 98–2053(JP).

United States District Court,
D. Puerto Rico.

April 26, 1999.

Jose R. Rosello Camacho, Manati, PR, for plaintiff.

Pedro J. Manzano Yates, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for defendant.

### OPINION & ORDER

PIERAS, Senior District Judge.

### I. *INTRODUCTION*

Before the Court are Co–Defendant Argemiro Gómez's Motion to Dismiss and Brief in Support of Argemiro Gómez's Motion to Dismiss (**docket No. 12**) and Plaintiff's Opposition to Co–Defendant's Motion to Dismiss (docket No. 25).

· Plaintiff Fernando Rochet Canabal ("Rochet") brings this action against Defendants Aramark Corporation, Aramark Services of Puerto Rico, Inc., (collectively, "Aramark") and Argemiro Gómez ("Gómez") invoking sexual harassment and gender-based discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2; "Law 100", P.R.Laws Ann. tit. 29 § 146 (Puerto Rico's employment discrimination statute); "Law 17," P.R.Laws Ann. tit. 29 § 155 (Puerto Rico's sexual harassment statute); and Article 1802 of the Puerto Rico Code, P.R.Laws Ann. tit. 5141 (Puerto Rico's general tort statute).

## II. *STANDARD UNDER FED.R.CIV.P. 12(B)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991). The Court must accept as true the well-pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences therefrom in factor of the plaintiff. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990).

In opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 22 (1st Cir.1991). Rather, a plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim. *Id.* at 23 (citing *Correa–Martinez*, 903 F.2d at 52; *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989); *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957)). Plaintiff must set forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). Therefore, for purposes of this discussion, the Court assumes that the following allegations are true.

## III. *FACTUAL BACKGROUND*

On or about February of 1996, Rochet started to work for Aramark, a corporation engaged in food services, at its cafeteria in the Warner–Lambert plant in Vega Baja, Puerto Rico. Ever since the start of his time at the cafeteria, Rochet was the target of intentional and malicious sexual harassment by Co–Defendant Gómez, his supervisor and the cafeteria's manager. Rochet's exposure to Gómez's sexually charged behavior began early in their professional relationship. Gómez began to ask Rochet's opinion about other male coworkers, and on one occasion, he commented to Rochet of his desire to perform oral sex on another man. (Compl. at ¶ 7C). At that point Gómez told Rochet, "don't get shocked, you know I am homosexual" and added "sex is always the same no matter whether you drink a Heineken or a Budweiser, it's always beer." (*Id.*). Further, Gómez constantly invited Rochet to his house in Rincón, Puerto Rico and invited him to have sexual relations. (Compl. at ¶ 7d).

Rochet never welcomed Gómez's sexual advances. After realizing that his sexual advances were not being reciprocated, Gómez started to create a hostile and intimidating working environment for Rochet. For instance, Gómez followed Rochet and asked co-employees where Rochet lived and went. At one point, Gómez physically attacked Rochet. (Compl. at ¶ 9k, l).

Faced with Gómez's behavior, Rochet contacted Aramark officials who proceeded to replace Gómez at the Cafeteria. Rochet alleges, however, that this was a "screen" substitution because Gómez actually remained in control of the cafeteria. Rochet alleges that after conducting an investigation, Aramark did not find any evidence of sexual harassment. Thereafter, Aramark discharged Rochet telling him that his services will no longer be needed. Upon receipt of his first unemployment check, Aramark sent a letter to Rochet notifying him that he could be assigned to another of Aramark's cafeterias.

## IV. *DISCUSSION*

### A. Individual Liability Under Title VII

Gómez argues that Rochet's claims against him should be dismissed because

this Court has repeatedly held that Title VII does not provide for the imposition of individual liability. Rochet responds by stating that, although the issue of individual liability is not an undecided issue in this District, there are "plausible and well-founded legal theories and well-reasoned judgments [in other districts and circuits] that sustain that supervisors are subject to individual liability under Title VII...." (Pls.' Opp'n Co–Def's Mot. Dismiss at 3). In the alternative, Rochet argues that Gómez is liable under the "alter ego" exception recently recognized by this Court. *See Santiago v. Lloyd,* 33 F.Supp.2d 99 (D.Puerto Rico 1998) (Pieras, J.). The Court will address the issue of individual liability under Title VII, and specifically, the decisions rendered by this Court.

■ Section 703(a) of Title VII states that:

> [i]t shall be unlawful employment practice for an *employer* to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e–2 (emphasis added). Title VII's coverage has been extended to proscribe sexual harassment in the workplace. *See Acevedo Vargas v. Colon,* 2 F.Supp.2d 203, 205 (D.Puerto Rico 1998) (referring to the EEOC guidelines which establish the criteria for determining when unwelcome conduct of a sexual nature constitutes sexual harassment for purposes of Section 703 of Title VII). Therefore, Title VII is the applicable federal cause of action addressing claims for sexual harassment in the workplace.

Because Title VII is directed at "employers," determining the meaning of this term is essential to our discussion. Title VII defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day and *any agent of such person."* 42 U.S.C. § 2000e (emphasis added). Therefore, because Gómez is not

the employing entity, the Court will focus on whether he can be held liable as an agent of the employing entity. *See Rivera Rodriguez v. Police Dept. of Puerto Rico,* 968 F.Supp. 783, 785 (D.Puerto Rico 1997) (Pieras, J.); *Anonymous v. Legal Services Corporation of Puerto Rico,* 932 F.Supp. 49, 50 (D.Puerto Rico 1996) (stating that "resolution of the [individual liability] question depends on how the 'and any agent' language is interpreted."). That is to say, the Court must decide whether Title VII, by including in its definition of employer any agent of "a person engaged in an industry affecting commerce who has fifteen or more employees," intended for such agents to be subject to liability for engaging in the proscribed discriminatory behavior. 42 U.S.C. § 2000e–2.

Although the First Circuit has yet to decide whether a Title VII plaintiff may maintain a suit against an individual in his personal capacity, most circuits have held that no personal liability can be attached to agents or supervisors under Title VII. *See Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931 (1st Cir.1995) (declining to address the issue of individual liability); *but see Haynes v. Williams,* 88 F.3d 898 (10th Cir.1996) (no individual liability under Title VII); *Williams v. Banning,* 72 F.3d 552 (7th Cir.1995) (same); *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995) (same); *Gary v. Long,* 59 F.3d 1391 (D.C.Cir.1995) (same); *Lenhardt v. Basic Institute of Technology, Inc.,* 55 F.3d 377 (8th Cir. 1995) (same); *Smith v. Lomax,* 45 F.3d 402 (11th Cir.1995) (same); *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994) (same); *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993) (same). Besides the First Circuit, only the Third and Sixth Circuit Courts of Appeals have yet to rule on the issue of individual liability. *See Santiago v. Lloyd,* 33 F.Supp.2d at 102. Like the majority of the circuit courts, this District has generally held that individual defendants are not liable under Title VII. *See Ocasio Berrios v. Bristol Myers Squibb Puerto Rico,* No. 22 Civ.

No. 98–2071 (D.Puerto Rico Mar. 4, 1999) (Pieras, J.); *Acevedo Vargas v. Colon*, 2 F.Supp.2d at 206; *Hernandez v. Wangen*, 938 F.Supp. 1052 (D.Puerto Rico 1996); *Anonymous v. Legal Services Corporation*, 932 F.Supp. at 50–51; *but see Santiago v. Lloyd, supra.*

The Court is compelled by the reasoning of previous decisions within this District. Title VII's statutory structure suggests that Congress did not intend to impose individual liability over supervisors or agents of employers. *See Acevedo Vargas v. Colon*, 2 F.Supp.2d at 206. Liability under the statute is triggered when the defendant/employer retains fifteen or more employees. *See* 42 U.S.C. § 2000–e. In establishing this threshold, Congress sought to protect small entities. *See Tomka v. Seiler Corp.*, 66 F.3d at 1319. Thus, " '[i]f Congress decided to protect such entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liabilities to run against individual employees.' " *Acevedo Vargas v. Colon*, 2 F.Supp.2d at 206–07 (citing *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993)).

Further, because liability under Title VII hinges on retaining 15 or more employees, in order to hold an individual liable, the employing entity would have to retain at least 15 employees. If that number is not surpassed, individuals would not be subject to liability. Therefore, individual liability derives from the employer's exposure to liability. The Court finds that conditioning an individual's liability on a factor over which the individual would not generally control to be nonsensical. Had Congress intended to hold individuals liable, it would have addressed the actions and conditions that would subject them to liability.

██ Further, this District has concluded that the tasks mandated to employers under Title VII are applicable to the corporate entities and not to individual supervisors. *See Hernandez v. Wangen*, 938 F.Supp. at 1064 (noting that tasks such as maintaining records that shed light on potential unlawful employment practices and posting notices about the provisions of Title VII in conspicuous places on the work premises are undoubtedly tasks associated with corporate entities, not individuals.). Therefore, because Title VII is mostly structured to guide an employer's behavior, the Court finds that Title VII does not provide for individual liability. Notwithstanding the general rule of no individual liability, the rule is not without its exception.

Rochet addresses the exception stating that, even if individuals are generally not subject to liability under Title VII, this Court in *Santiago v. Lloyd* recognized that if a supervisor is an "alter-ego" of the employer he can be held individually liable under Title VII. (Pl.'s Opp'n Co–Def's Mot. Dismiss at 5). Plaintiff's argue that Gómez is Aramark's alter-ego because he was the manager who exercised control for hiring and firing personnel, he could influence the company for plaintiff receiving a higher-position; and exerted control in the decision-making process in the cafeteria.

In assessing Rochet's arguments, the Court revisits its analysis in *Santiago v. Lloyd*, where it concluded that Co–Defendant Lloyd was subject to individual liability. On that occasion, the Court concluded that Lloyd was subject to individual liability because his " 'role [was] more than that of a mere supervisor but [was] actually *identical* to that of the employer.' " *Santiago v. Lloyd*, 33 F.Supp.2d at 103–04 (citing *Curcio v. Chinn Enterprises, Inc.*, 887 F.Supp. 190 (N.D.Ill.1995) (emphasis added)). The *Santiago* Court grounded its conclusion that Santiago was subject to individual liability on Plaintiffs' allegations that Santiago was a 50% stockholder and president of Defendant Lupi's Enterprises, Inc., the employer. *See Santiago v. Lloyd*, 33 F.Supp.2d at 104. Although Lloyd was not the sole owner of Lupi's Enterprises, Inc., he was "always physically there 'supervising' the business." *Id.* By combining all of these factors, the Court arrived

at its conclusion that Lloyd was Lupi's alter-ego, and therefore potentially liable under Title VII.

Other courts have factored similar, if not identical, considerations as those in *Santiago*. For instance, in establishing that an individual supervisor was subject to liability under Title VII, the *Curcio* Court, like the *Santiago* Court, took into account factors such as the supervisor's control over the employing entity, his decision-making power, and whether the supervisor left any avenue for employees to object to his conduct. *See Curcio v. Chinn*, 887 F.Supp. at 194. The Eastern District of New York has stated that:

> [t]o plead a claim for individual liability under the alter ego doctrine, two essential elements must be plead: (1) that the person exercises such dominion and control with respect to the transaction attacked that the corporation had *no separate will of its own;* and (2) that the domination and control was used to commit a ... wrong against the Plaintiff which proximately caused the Plaintiff's injuries.

*Lane v. Maryhaven Center of Hope*, 944 F.Supp. 158, 163 (E.D.N.Y.1996) (emphasis added) (citations omitted). A common element in establishing individual liability, as is evident in *Lane, Curcio* and other case law, is the control of the individual defendant in relation to the employing entity. In *Janopoulos v. Harvey L. Walner & Assoc. Ltd.*, 835 F.Supp. 459 (N.D.Ill.1993), co-defendant Harvey L. Walner was the only partner of Co-Defendant law firm. In finding that Walner was an alter-ego, the Court stated that Walner was the only person with his amount of authority and responsibility. The Court noted simply that "Walner [was] the law firm." *Id.* at 462. In this case, the Court, therefore, must determine whether, at the relevant time, Gómez "was" Aramark, or, as described in *Santiago*, "identical to the employer."

In the instant case, Gómez was the manager of Aramark's cafeteria in Vega Baja. Based on Plaintiff's Complaint, Gómez's position as manager is distinguishable from those individuals who were subject to the alter-ego exception in the cases cited above. Gómez did not have a stake in the ownership of Aramark or its cafeteria. Further, in the alter-ego cases, the individual defendant was, in fact, the employer because, among other factors, the supervisor invariably left no avenue for his employees to object to his conduct. In the instant case, Rochet had the opportunity to complain about the alleged harassment episodes to officials who had more authority than Gómez. Although to no avail, Aramark investigated Rochet's sexual harassment claims. Therefore, unlike the *Lane* test, Aramark had a will as an entity separate from that of Gómez. It would undeniably be a stretch to state that Gómez was Aramark's alter ego.

Further, the alter-ego cases present a scenario where the individual supervisor had an ownership stake in the employing entity. In the instant case, Rochet has not made any allegations suggesting that Gómez had any equity in Aramark.

### B. Individual Liability Under Puerto Rico Law

Gómez further argues that Rochet's Law 17 and Law 100 claims against him should be dismissed because individual liability raises a novel and complex issue of state law which has not been addressed by the Puerto Rico Supreme Court or this District. *See Colon Hernandez v. Wangen*, 938 F.Supp. at 1066 (stating that "[r]esolving the novel question of whether supervisors can be held personally liable for sexual harassment under Law 17 ... and Law 100 is an issue that will be rendered progressively clear by the course of litigation in the Puerto Rico courts."). Rochet, however, responds that both Laws 17 and 100 define employer as including agents and supervisors and therefore individuals, such as Gómez, are subject to liability.

The Court does not agree with neither Gómez's status of the case law nor with Rochet's reading of the statutes. In *Figueroa v. Mateco, Inc.*, 939 F.Supp. 106 (D.Puerto Rico 1996), this District decided whether individual liability may be imposed under Law 100. Prior to the *Figueroa* decision, the issue of individual liability under Law 100 had not been decided by either the Puerto Rico Supreme Court or this District. *See Figueroa v. Mateco*, 939 F.Supp. at 107. The *Figueroa* Court, however, took up the issue and began its analysis by stating that Law 100 prohibits discrimination by an "employer," a term defined as "any natural or artificial person employing laborers, workers or employees, and the chief official manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person." P.R.Laws Ann. tit. 29 § 151(2). The conclusion drawn by plaintiffs is that because officers and administrators are included under the definition of employer, such individuals are subject to liability.

█ The *Figueroa* Court noted, however, that such "plain language" reading of the statute is incorrect, reasoning that other statutes, which use the same definition of employer, do not create individual liability. *Id.* at 106–07. The Puerto Rico minimum wage law is a good example of such a statute. *See Secretary of Labor v. Ibarra Garcia*, 88 P.R.R. 494 (1963). The *Ibarra Garcia* Court held that the expansive definition of "employer" pursues to ensure *respondeat superior* liability. Based on the *Ibarra Garcia* decision, the *Figueroa* Court held that "[g]iven Law 100's use of the identical definition of 'employer' as the minimum wage law, the Court concludes that Law 100 similarly does not provide for the imposition of individual liability." In view of the *Figueroa* and *Ibarra Garcia* decisions, the Court finds that Gómez is not subject to liability under Law 100.

█ The Court finds that the same reasoning used in the *Figueroa* carries over to Law 17. "Law 17 is part and parcel of the antidiscrimination scheme established in Law 100; it serves to specify that sexual harassment is an actionable form of sex discrimination." *Garcia Pantoja v. General Instruments (Puerto Rico) Inc.*, 1996 WL 790102 (D.Puerto Rico). Therefore, the analysis which applies to Law 100 also applies to Law 17 and "nothing in [Law 17] leads [the Court] to conclude that sexual harassment was to be singled out as the only form of employment discrimination, including other forms of sex discrimination, for which supervisors or agents could be individually liable." *Id.* at *1. Therefore, Law 17 does not provide for individual liability either.

## C. Other Matters

Rochet has also brought a tort claim against Defendants. Although Gómez seeks the dismissal of Rochet's claims against him, which include the tort claims, he has failed to address whether the Court should dismiss such claim in tort. Therefore, the Court shall not entertain such issue.

## IV. *CONCLUSION*

For the reasons stated above, the Court hereby **DISMISSES** Plaintiff Fernando Rochet Canabal's Title VII, Law 100, and Law 17 claims against Co–Defendant Argemiro Gómez and hereby **GRANTS** Gómez's Motion to Dismiss (docket No. 12).

IT IS SO ORDERED.