**Luz Maria ACEVEDO VARGAS, et al., Plaintiffs,**

v.

**Gumersindo COLON, et al., Defendants.**

**No. 96–2102 (DRD).**

United States District Court, D. Puerto Rico.

March 25, 1998.

Frank D. Inserni–Milam, San Juan, PR, for Plaintiffs.

Magali B. Arrivi–Cos, Litigation Div., Municipality of San Juan, San Juan, PR, Carmen I. Munoz–Noya, Lespier & Munoz–Noya, San Juan, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the court is Co-defendants' Motion to Dismiss, (Docket No. 9), for failure to state a claim upon which relief can be granted. Co-defendants Gumersindo Colón and César Rodríguez argue that they are not liable in their individual capacities under Title VII for the acts which Plaintiffs alleges in the complaint. For the reasons stated below, the court dismisses the complaint against the individual Co-defendants Colón and Rodríguez in their personal capacity.

### Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a party may request the court to dismiss the case for failure to state a claim upon which relief can be granted. In analyzing a motion to dismiss, a court examines a complaint in the light most favorable to a plaintiff. The standard provides that a court must accept as true all well-pleaded allegations within the complaint and indulge all reasonable inferences in favor of a plaintiff. *See Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996); *Brown v. Hot, Sexy & Safer Productions, Inc.,* 68 F.3d 525, 530 (1st Cir. 1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct.

1044, 134 L.Ed.2d 191 (1996); *Clarke v. Kentucky Fried Chicken of Cal., Inc.,* 57 F.3d 21, 22 n. 1 (1st Cir.1995). In order to survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514–515 (1st Cir. 1988). However, a court must draw a line at some point and not "credit bald assertions, periphrastic circumlocutions, or outright vituperation." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). In *Litton Indus., Inc. v. Colon,* 587 F.2d 70, 74 (1st Cir.1978) the First Circuit court of appeals stated that in motion to dismiss ("[O]ur focus is limited to the allegations of the complaint. The question is whether a liberal reading of [the complaint] can reasonably admit of a claim." (internal quotations omitted)) Thus, a court should not dismiss a complaint for failure to state a claim unless it is clear that the plaintiff will be unable to prove any set of facts, included within the pleadings, which would entitle him to recovery. *Conley v. Gibson,* 355 U.S. 41, 45–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Factual Background

The instant claim arises from alleged sexual harassment acts committed by Co-defendants Gumersindo Colón and César Rodríguez. On January 2, 1998, the Municipality of San Juan hired Co-plaintiff Luz María Acevedo as a career employee to be the Medical Director of the Dr. José S. Belaval Health Center (the "Center"). Her salary was that of $3,000.00 per month, plus fringe benefits such as medical insurance, and a retirement plan among others.

Dr. José S. Belaval Health Center Board, Inc. ( hereinafter referred to as the "Board"), a separate entity, is a non profit organization that administers and disburses funds received from the United States Government, as well as funds received from the Municipality of San Juan for the Center's operation.

Plaintiffs allege that, since January 1992, Co-defendant César Rodríguez, administrator and, later, Executive Director of the Center, made sexually offensive comments, constantly asked Co-plaintiff out for a drink on

Friday afternoons, and harassed Co-plaintiff by requiring her to repeat unnecessary tasks which she had previously completed in proper manner and form.

On or about April 13, 1994, Co-defendant Gumersindo Colón, the Board's Vice–President, called Co-plaintiff and asked her to prepare a report as to the potential deficiencies in Co-defendant Rodríguez's work performance and relating to problems that may have arisen between Rodríguez and Co-plaintiff. On April 21, 1994, Co-defendant Colón called Co-plaintiff to schedule a lunch conference with the purpose of discussing the report. They met for lunch and, afterwards, Co-plaintiff alleges that she drove Co-defendant Colón to the Fisherman's Association dock, where he invited Co-plaintiff to come board his boat. Once aboard, Co-defendant Colón offered to show Co-plaintiff the cabin section of the boat. When Co-plaintiff entered this section, Co-defendant Colón allegedly jumped all over her, forcible kissing and fondling her and further attempting to undress her.

On or about October 1994, Co-plaintiff Luz María Acevedo, as the Center's Medical Director, was informed by Mr. Guillermo Otero, Federal Program Director, that there were unnasigned federal funds available from an HIV program. He stated that it was advisable for the Center to prepare a proposal in order to rescue these funds. Co-plaintiff Acevedo consulted with Co-defendant Rodríguez and Mr. Casiano, the Board's President a non party in the instant complaint. All agreed to prepare the proposal and/or to jointly contribute in its preparation.

Shortly thereafter, the Municipal Medical Director, Dr. Javier Morales, scheduled a meeting wherein he charged members of the Board, Co-plaintiff Acevedo and Co-defendant Rodríguez with "infidelity" towards the Municipality, referring to the preparation without his knowledge of the proposal seeking the Federal Program Funds and without his participation. At said meeting, Co-plaintiff Acevedo informed Dr. Javier Morales that none of the participants knew the subtle and detailed distinctions between the Municipal HIV Program and the Federal Grants funding procedures. Co-plaintiff Acevedo merely defended the Center's need for the federal funds.

Subsequently, Mr. Rueda, from the U.S. Department of Health an Human Services, called Co-plaintiff Acevedo to inquire about the proposal for the federal funds, to which she answered that they were working in the proposal.

On January 10, 1995, Dr. Javier Morales discovered Co-plaintiff Acevedo's willingness to continue preparing the proposal, reason for which he was extremely upset at Ms. Acevedo and threatened Board members. Then, Co-defendant Colón and Casiano Alejandro, another member of the Board, met with Dr. Javier Morales, who, without approval of the Board, requested that Co-plaintiff Acevedo be removed from her position as Medical Director. The position had been granted a $24,000.00 raise upon recommendations of the U.S. Department of Health and Human Services. Co-plaintiff was transferred, demoted and ultimately terminated.

On April 4, 1995, Co-plaintiff filed a complaint with the Puerto Rico Labor Department's anti-discrimination unit based on the facts concerning Co-defendant's sexual harassment, facts which Co-plaintiff had previously informed to the Board.

### Discussion

Title VII prohibits discrimination in employment as to hiring, firing, compensation, terms, conditions and privileges of employment on the basis of race, color, religion, sex or national origin, imposing liability on the employer for said acts.

Section 703(a) of Title VII states:

It shall be unlawful employment practice for an *employer* to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e–2. The guidelines issued by the Equal Employment Opportunity Commission (EEOC), establishing the criteria for determining when unwelcome conduct of a sexual nature constitutes sexual harassment for purposes of Section 703, provide:

[A]n employer is responsible for its acts and those of its agents and supervising employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized of even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence.

The term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day and any agent of such person." 42 U.S.C. § 2000e. When Congress used the word "agent" in this definition, the purpose was to incorporate the doctrine of respondent superior into the law. *Colón Hernández v. Wangen*, 938 F.Supp. 1052 (D.P.R.1996); *Flamand v. American International Group*, 876 F.Supp. 356 (D.P.R.1994), (stating that "the definition of employer, which includes the employer's agents, serves not as a vehicle to impute liability upon said agent, but rather as a means to incorporate respondent superior liability into the [ADEA]"); *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995) (stating that "ADA's definition of employer which (like Title VII) includes an employer's agents, is simply a statutory expression of traditional respondent superior liability and imposes no individual liability on agents"). *See generally Mason v. Stallings*, 82 F.3d 1007 (11th Cir.1996); *Smith v. Lomax*, 45 F.3d 402 (11th Cir.1995);*Cross v. Alabama*, 49 F.3d 1490 (11th Cir.1995); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.1994); *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir.1994); *Miller v. Maxwell's International, Inc.*, 991 F.2d 583 (9th Cir.1993); *Torres v. Intercontinental Trading Inc.*, 1994 WL 752591 (D.P.R.1994); *Hernández v. Miranda Vélez*, 1994 WL 394855 (D.P.R.1994).

The majority of the circuits have concluded that there is no personal liability of agents and/or supervisors under Title VII and/ or ADEA, 29 U.S.C. § 621 et seq. because said individual persons are not "employers" within the act. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–1317 (2nd Cir.1995);*EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir.1995); *Lenhardt v. Basic Institute of Technology, Inc.*, 55 F.3d 377

(8th Cir.1995); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir.1994); *Grant v. Lone Star Co.*, 21 F.3d 649, 651–653(5th Cir.1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993); *Smith v. Lomax*, 45 F.3d 402, 403–404 (11th Cir.1995)

As stated in *Colón Hernández*, 938 F.Supp. 1052, "individual defendants [as are Co-defendants Colón and Rodríguez] are not liable under Title VII. Title VII leaves it to the corporate entities, which are held liable for the discriminatory acts of these individuals, to deter the individuals' unlawful employment practices. This includes not only the corporate entity's own employees but those individuals who work for the employer outside the company".

Recapitulating, there are two convincing arguments that impress the court, adopted by Circuit and District Courts in analyzing potential personal liability under Title VII. ( *See generally Contreras Bordallo v. Banco Bilbao Vizcaya*, 952 F.Supp. 72, 73, n.2 (D.P.R.1997) and *Flamand* 876 F.Supp. at 361–64 containing the circuit court opinions discussing personal liability of supervisors and/or agents.) First the definition of "employer" under the Act, 42 U.S.C. § 2000e(b), which includes the employer's "agents", is not a vehicle to impute liability upon said agent, but a means to incorporate respondent superior liability into the law. *Maxwell's Int'l Inc.*, 991 F.2d at 587; *Tomka*, 66 F.3d at 1314 ("there is a noticeable absence of any mention of agent liability in the floor debates over § 2000e(b)".) Second the statutory scheme of Title VII indicates that Congress did not intent to impose individual liability over agents and/ or supervisors as employees. Title VII limits the liability to employers with fifteen or more employees 42 U.S.C. § 2000e(b) obviously in an attempt not to burden small entities with the costs of litigating these types of claims. Further in authorizing compensatory and punitive damages, 42 U.S.C. § 1981(a), Congress in 1991 limited the liability of employers based on the number of employees of the corporation. "If Congress decided to protect such entities with limited resources from liability, it is inconceivable that Congress intended to

allow civil liabilities to run against individual employees." *Maxwell's Int'l Inc.*, 991 F.2d at 587, and at n. 2.

Because the liability of Co-defendants Colón and Rodríguez is grounded exclusively on individual liability as "agents" and/ or supervisors, the court must dismiss the Title VII cause of action .[1]

THEREFORE, the court grants Co-defendants motion to dismiss.

IT IS SO ORDERED.

---

**1.** The family of Co-plaintiff Acevedo lack cause of action to sue in the case under Title VII. Said family members as third parties do not comply with the definition of "employees" under the Act. 42 U.S.C. § 2000e(b). Under local law, the Puerto Rico Supreme Court decided that a girlfriend of the affected employee would have standing to sue under the Civil Code of Puerto Rico but not under the local labor law (Law 100 of 1959, P.R. Laws · Ann, tit. 29 § 146 et seq.),*Santini Rivera v. Service Air,* 94 JTS 121. Family members therefore have a cause of action based on pendent jurisdiction under article 1802 of the Puerto Rico Civil Code.