**Clara PADILLA CINTRON, Plaintiff**

v.

**Pedro ROSSELLO GONZALEZ,
et al., Defendants**

No. CIV. 01–1294(JP).

United States District Court,
D. Puerto Rico.

Feb. 19, 2003.

José A. Feliciano Rodríguez, Bayamón, PR, for Plaintiff.

Marie L. Cortés Cortés, Lespier & Muñoz Noya, Eileen Landrón Guardiola, San Juan, PR, for Defendant.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION AND BACKGROUND

The Court has before it Co–Defendants the Commonwealth of Puerto Rico ("the Commonwealth"), the Department of Corrections and Rehabilitation ("DOC"), the Juvenile Institutions Administration ("JIA"), Sila M. Calderón, in her official capacity as Governor of the Commonwealth of Puerto Rico, Mr. Víctor Rivera González, in his official capacity as Administrator of the Juvenile Institutions Administration and Mr. Fernando Iglesias Vargas', in his official capacity as Director of Social Treatment Center, "Motion To Dismiss Under Fed.R.Civ.P. 12(b)(6) and Memorandum of Law In Support Thereof" (docket No. 10); Co–Defendants Víctor Rivera González, José Aponte Pérez, Fernando Iglesias Vargas, Pedro R. Figueroa Pacheco and Luis Mendez's [1], in their personal capacities, "Motion To Dismiss Under Fed.R.Civ.P. 12(b)(6) and Memorandum of Law In Support Thereof" (docket No. 14); Plaintiff's opposition thereto (docket No. 28) [2]; Co–Defendants Myriam Quiñones and José Lozada Medina's "Motion[s] to Quash Summons" (docket Nos. 23, 24); and Plaintiff's opposition thereto (docket No. 27).

Plaintiff filed the instant action on March 12, 2001 [3], pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e—2000e–17; 42 U.S.C. §§ 1981, 1983 and 2000a–1; Title III of the Civil Rights Act of 1991; Puerto Rico Law No. 17, of April 22, 1988, 29 P.R. Laws Ann. § 155; and Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141 and 5142. Plaintiff requests a declaratory judgment as well as compensatory and punitive damages. Plaintiff claims that she has worked in an environment riddled with continuous sexual harassment, especially by her supervisor, Co–Defendant Alberto Santos Ortiz. She claims that no special efforts were taken to prohibit or avoid the discriminatory contact.

---

1. The Court hereby **GRANTS IN PART** Co–Defendants Pedro R. Figueroa Pacheco and Luis Mendez's Motions to Join and Adopt Defendants' Motion to Dismiss (docket Nos. 22 and 29) and **INCLUDES** Co–Defendants Figueroa and Méndez in its consideration of the "personal capacity" Defendants' motion.

2. The Court **ACCEPTS** Plaintiff's opposition and hereby **DENIES** Defendants' "Motion to Strike Plaintiff's 'Motion In Opposition To Defendant's Motion to Dismiss." (docket No. 29a).

3. Plaintiff filed an Amended Complaint on June 7, 2001 (docket No. 4).

All Defendants contend that Plaintiff cannot sustain a Section 1981 cause of action because Plaintiff does not allege racial discrimination against her; that Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 and 31 P.R. Laws Ann. §§ 5141 and 5142 are time-barred and, as such, all of these claims should be accordingly dismissed. Co–Defendants the Commonwealth, the DOC, the JIA and the named Co–Defendants, in their official capacities, claim that Plaintiff's claims under 42 U.S.C. §§ 1981, 1983 and 2000a–1, Title III of the Civil Rights Act of 1991, and Plaintiff's supplemental Commonwealth law claims are barred by the Eleventh Amendment of the United States Constitution and should be dismissed against them. The named Co–Defendants, in their individual capacities, claim that Title VII does not provide for individual liability and as such they cannot be held personally liable and Plaintiff's Title VII claim should be dismissed as held against them. Finally, Co–Defendants Myriam Quiñones and José Lozada Medina claim that Plaintiff served them outside of the 120 day term provided by Fed.R.Civ.P. 4(m) for service of process and Plaintiff's claims against them should be dismissed for failure to serve.

The Court deciphers from Plaintiff's muddled opposition that Plaintiff argues that the Amended Complaint contains allegations sufficient to uphold a claim under 42 U.S.C.1981; that the statute of limitations was tolled by Plaintiff's claims filed with the Department of Labor; that neither the First Circuit nor the Supreme Court of the United States have clearly held that Title VII cannot provide for individual liability; and that Plaintiff has demonstrated cause as to why she failed to effectuate service upon Co–Defendants Myriam Quiñones and José Lozada Medina and claims that the service should be deemed effective. The Court addresses these arguments in turn.

## II. DISMISSAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir.1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996) (citations omitted); *see also Berríos v. Bristol Myers Squibb Caribbean Corp.*, 51 F.Supp.2d 61 (D.Puerto Rico 1999) (Pieras, J.). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero–Barceló v. Hernández–Agosto*, 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988)). The Court, however, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. *Abbott, III v. United States*, 144 F.3d 1, 2 (1st Cir.1998) (citing *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir.1996)). It is with this framework in mind that this Court will assess the motions before it.

## III. FACTUAL ALLEGATIONS

Plaintiff's allegations as found in her Amended Complaint, and which are taken as true for purposes of this motion, are as follows:

A. Plaintiff has been employed by the JIA since February 1997 as a penal guard.

B. Over the course of the last few years, Plaintiff has worked in an environment riddled with continual sexual harassment. She has been subjected to continual sexual harassment by her supervisors over that time period. The worst offender was her direct supervisor, Co–Defendant Alberto Santos–Ortiz ("Santos–Ortiz").

C. Co–Defendants were aware of the continual sexual exploits of other supervisors within the office and did nothing to stop them. Although these affairs and other sexual antics disrupted the work environment of the office, no effort was made to prohibit the conduct.

D. Plaintiff avoided Co–Defendant Santos–Ortiz on multiple occasions, in order to avoid becoming the subject of his crude remarks and stares. She also did what she could to discourage him from telling her crude jokes, sexual jokes and innuendos and making suggestive and unwanted remarks to her.

E. At one point, Co–Defendant Santos–Ortiz began approaching Plaintiff, often with the door closed, and asked her to be his lover and that he would pay all her debts and take care of all her needs. Plaintiff was appalled and offended. Plaintiff declined the offer choosing instead to suffer and be emotionally distressed.

F. Almost immediately upon commencing her duties under the supervision of Co–Defendant Santos–Ortiz, he began asking Plaintiff about her age, civil status, residence and education. Later, he asked questions specifically related to her civil status; like if she had a boyfriend or had been married.

Plaintiff informed him that it was not his concern. Co–Defendant Santos–Ortiz also asked Plaintiff if she danced and what things she preferred, what places she liked to go to and after questioning her he assured her that he was interested in going out with her. Plaintiff clearly stated that she did not go out with married men.

G. Co–Defendant Santos–Ortiz began using the nick-name "Clarita" to address Plaintiff and asked that if that was the reason that she would not give him a kiss and a hug and that he was jealous because she did that with the other co-workers.

H. Co–Defendant Santos–Ortiz also accused Plaintiff of being a racist and that was the reason she would not go out with him.

I. In other instances, in front of other co-workers, Co–Defendant Santos–Ortiz stated that he wanted to marry Plaintiff and that her future husband would have to use "a chipping hammer and a lot of vinegar because Plaintiff had never tried it" and that "her vagina would be eaten by worms".

J. After an incident with the juvenile detainees, where Plaintiff was held captive and where one of the inmates forced Plaintiff to hold his penis, Co–Defendant Santos–Ortiz said that it was of no importance and asked Plaintiff if that was the first time she had ever held a penis in her hands.

K. Co–Defendant Santos–Ortiz was constantly comparing the bodies of the other female workers with Plaintiff's.

L. Plaintiff suffered from adverse employment conditions as a result of her disdain to Co–Defendant Santos–Ortiz's advances. Plaintiff was subjected to severe psychological stress, as a result of the demeaning environment, in which she was required to work.

M. On January 25, 1999, Plaintiff formally notified Co–Defendant Fernando Iglesias Vargas, Director of the Center of Social Treatment of the JIA, that she was being harassed by her supervisor, Co–Defendant Santos–Ortiz and that the harassment began in 1997.

N. Due to Defendants inaction, Plaintiff filed a charge of discrimination against Defendants, at the Anti–Discrimination Unit of the Puerto Rico Department of Labor on July 7, 1999, complaining of the above alleged acts of sexual harassment.

O. On or about December 12, 2000, the Equal Employment Opportunity Commission informed Plaintiff of her right to sue Defendants.

## IV. DISCUSSION

### A. *42 U.S.C. § 1981*

Defendants submit that Plaintiff's complaint contains no factual allegations to establish a Section 1981 *prima facie* case. Section 42 U.S.C. § 1981 provides as follows:

a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other...

(c) Protection against impairment

The rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of State law.

42 U.S.C. § 1981 (West 2001).

■■■ Section 1981 has been recognized by this Court to protect four different interests: "(i) contractual rights, (ii) access to judicial process, (iii) full and equal benefit of all laws and proceedings, and (iv) subjection to punishment." *Bermúdez Zenón v. Rest. Compostela, Inc.*, 790 F.Supp. 41, 44 n. 3 (D. Puerto Rico 1992) (Pieras, J.) (citing 2 J. Cook & J. Sobieski, *Civil Rights Actions* 5–24 ¶ 5.03 (Bender 1991)). The First Circuit has explicitly held that Section 1981 prohibits intentional discrimination based on race. *See Alexis v. McDonald's Rest. of Mass. Inc.*, 67 F.3d 341, 346–347 (1st Cir.1995).

■■ Plaintiff argues that Co–Defendant Santos–Ortiz's alleged comments calling her a racist are sufficient to maintain a claim under Section 1981. The Court finds Plaintiff's argument to be specious at best. The Supreme Court of the United States eloquently laid out the parameters of the protections garnered under Section 1981 as those protecting individuals from *race based* discrimination and not from discrimination based upon sex or gender. *See Runyon v. MacCrary*, 427 U.S. 160, 167 96 S.Ct. 2586, 2593 49 L.Ed.2d 415 (1976); *see also Trujillo v. Ready Mix Concrete, Inc.*, 585 F.Supp. 1346, 1347 (D.Puerto Rico 1984). Assuming arguendo that Co–Defendant Santos–Ortiz did indeed call Plaintiff a racist it would appear to be a manner in which alleged sexual harassment was manifested and was not a form of race based discrimination. For this reason, Defendants' Motions to Dismiss are hereby **GRANTED IN PART** and Plaintiff's claims arising under 42 U.S.C. § 1981 are hereby **DISMISSED WITH PREJUDICE** against all Defendants.

# 54

## B. Timeliness of Plaintiff's Claims

Defendants contend that Plaintiff's claims under 42 U.S.C. §§ 1981[4] and 1983; and under 31 P.R. Laws Ann. §§ 5141 and 5142 are time barred. Defendants state that Plaintiff's aforementioned claims accrued in 1997 when her supervisor was allegedly harassing her, or at the very latest, on January 25, 1999, when Plaintiff allegedly formally notified Co–Defendant Iglesias Vargas, that she was being harassed by Co–Defendant Santos–Ortiz. Defendants argue that Plaintiff filed the current complaint outside of the Puerto Rico one-year statute of limitations and as such, it should be dismissed. Plaintiff argues that she tolled the running of the statute of limitations when she filed a complaint with the Department of Labor and disputes Defendants' dates being that retaliatory actions were taken against her after filing the complaint.

■ Section 1983 does not provide a statute of limitation. Instead, the Supreme Court of the United States has held that courts must borrow the State's limitation period governing personal injury actions. *See Wilson v. García*, 471 U.S. 261, 266, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (finding it most unlikely that the period of limitations applicable to such claims ever was, or ever would be, fixed [by the forum State] in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect); *see also Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir.2001). In Puerto Rico the applicable limitation period for tort actions is one year under Article 1868(2) of the Civil Code. 31 P.R. Laws Ann. § 5298(2); *see also Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 174 (1st Cir. 1997); *Muñiz–Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir.1997); *Torres v. Superintendent of Police*, 893 F.2d 404, 406 (1st Cir.1990). In addition, this one-year period is applicable to actions brought pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code. *See Matos Ortiz v. Commonwealth of Puerto Rico*, 103 F.Supp.2d 59, 63 (D.Puerto Rico 2000) (citing *Olmo v. Young & Rubicam of P.R., Inc.*, 110 P.R. Dec. 740, 745–48 (P.R.1981)).

■ Although state law is utilized to determine the length of the statute of limitations for Section 1983, federal law will determine the date of accrual. *See Muñiz–Cabrero*, 23 F.3d at 610; *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992). The actual period begins to run when the aggrieved person "knows, or has reason to know, of the injury on which the action is based." *Rivera–Muriente*, 959 F.2d at 353; *see also Muñiz–Cabrero*, 23 F.3d at 610. Under this reasoning, "the one year period begins one day after the date of accrual." *Benítez–Pons v. Commonwealth of Puerto Rico*, 136 F.3d 54, 59 (1st Cir.1998); *see also Carreras–Rosa*, 127 F.3d at 174.

Defendants argue that the statute of limitations should have begun to run in either 1997, or at least, on January 25, 1999. However, Plaintiff argues that the date should be later because of her retaliatory claims. Nevertheless, Plaintiff's retaliatory claims would have stemmed from retaliatory actions taken directly after her claims were filed. *See Matos Ortiz*, 103 F.Supp.2d at 62. Therefore, the latest possible moment to accrue Plaintiff's claim would be August 1999. Plaintiff filed the current case on March 12, 2001. At first blush, it would appear that Plaintiff's claims are indeed out of term. However,

---

4. As the Court has dismissed Plaintiff's claims under 42 U.S.C. § 1983 above, the Court need not analyze the timeliness of the same.

Plaintiff argues that the statute of limitations was tolled due to her extrajudiciary claims filed with the Department of Labor and the EEOC.

■ Pursuant to Article 1873 of the Puerto Rico Civil Code, a plaintiff can interrupt the prescriptive period in one of three ways. "Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." 31 P.R. Laws Ann. § 5303 (Lexis Pub.1998); *see also Tokyo Marine and Fire Ins. Co., Ltd. v. Pérez & Cia. De Puerto Rico, Inc.*, 142 F.3d 1, 4 (1st Cir.1998). It is settled that for an extrajudicial claim to toll the statute of limitations, it must contain identical causes of action as the claim asserted in court. *See Matos Ortiz*, 103 F.Supp.2d at 62; *León–Nogueras v. Univ. Of Puerto Rico*, 964 F.Supp. 585, 589 (D.Puerto Rico 1997).

■ Defendants argue that the filing of a charge with the EEOC or the Anti–Discrimination Unit of the DOL cannot serve to toll the statute of limitations for a Section 1983 claim. Defendants additionally argue that Plaintiff's claims under Articles 1802 and 1803 of the Puerto Rico Civil Code cannot be tolled by Plaintiff's extrajudicial claims. Plaintiff counters, without any jurisprudential support, that her claim filed with the Anti–Discrimination Unit of the Department of Labor tolls the prescriptive date on her Section 1983 and Article 1802 and 1803 claims.

This Court has clearly held that "the EEOC has no jurisdiction over claims brought pursuant to § 1983, and thus, a charge filed with the EEOC or Puerto Rico Anti–Discrimination Unit cannot serve to toll the limitations period for a § 1983 claim." *Sifre v. Department of Health*, 38 F.Supp.2d 91, 96 (D.Puerto Rico 1999) (Pieras, J.); *see also Matos Ortiz*, 103 F.Supp.2d at 62, *León–Nogueras*, 964 F.Supp. at 589.

■ However, the case law is not so clear as to whether a claim filed with the DOL or the EEOC would toll the applicable statute of limitations for a plaintiff's claims brought under Articles 1802 or 1803. Case law clearly demonstrates that claims brought under Title VII or Puerto Rico Law 100, are not only tolled but are suspended pending the ultimate determination of the extrajudicial proceeding[5]. *See León–Nogueras*, 964 F.Supp. at 587–588; *Cintrón v. Estado Libre Asociado de Puerto Rico*, 127 P.R. Dec. 582, 593–595 (P.R.1990). The Supreme Court of Puerto Rico has rendered a decision that appears to argue that both Article 1802 and Law 100 claims can be tolled. *Sánchez v. A.E.E.*, 142 P.R. Dec. 880, 889 (Puerto Rico 1997). However, there is no evidence to demonstrate that Article 1802 claims should be suspended pending the ultimate determination of a extrajudicial proceeding, like a claim under Law 100. Therefore, the Court must look at what effect a toll would have upon the statute of limitations in the case at hand.

This Court has held that:

The normal effect of a single extrajudicial claim, such as an administrative charge, is to toll the statute of limitations and thus to start it running again. However, the court notes that the pendency of administrative proceedings does not prevent the period from running. Therefore, if no further action is

---

**5.** Defendants have not attempted to argue that Plaintiff's Title VII claim should be dismissed as time barred.

taken, upon the expiration of the new period the cause of action will be barred. *León–Nogueras,* 964 F.Supp. at 587. Under this analysis, the one-year statute of limitations for Plaintiff's claims would have begun anew on the date that Plaintiff filed her extrajudicial claim, which in this case was July 7, 1999. As noted earlier, Plaintiff did not file her complaint with this Court until March 12, 2001; well past the one-year statute of limitations period. It is for these reasons, that Plaintiff cannot now sustain that she tolled the statute of limitations when she filed a complaint with the DOL on July 7, 1999. Accordingly, Defendants' Motions to Dismiss are hereby **GRANTED IN PART** and Plaintiff's claims arising under 42 U.S.C. § 1983 and under Articles 1802 and 1803 of the Puerto Rico Civil Code are hereby **DISMISSED WITH PREJUDICE** against all Defendants.

### C. *Eleventh Amendment Immunity*

Co–Defendants the Commonwealth, the DOC, the JIA, and named Co–Defendants Sila M. Calderón, Víctor Rivera González, and Fernando Iglesias Vargas, in their official capacities, argue that Plaintiff's federal claims under 42 U.S.C. §§ 1981, 1983 and 2000a–1, Title III of the Civil Rights Act of 1991, and her supplemental Commonwealth law claims under Articles 1802 and 1803 of the Puerto Rico Civil Code and under Puerto Rico Law No. 17 of April 22, 1988, are barred by the sovereign immunity granted by the Eleventh Amendment of the United States Constitution[6]. Plaintiff's opposition does not seem to oppose this argument at all[7]. Nevertheless, the Court shall analyze Defen-

dant's contention in the light most favorable to Plaintiff.

 It is well settled law that the Eleventh Amendment immunizes states from suits for damages in federal court in the absence of abrogation by Congress or waiver by the state. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Commonwealth of Puerto Rico is treated as a State for Eleventh Amendment purposes. *See Jusino Mercado v. Commonwealth of Puerto Rico,* 214 F.3d 34, 39 (1st Cir.2000); *Ortiz–Feliciano v. Toledo–Dávila,* 175 F.3d 37, 39 (1st Cir. 1999); *see also Lane v. First Nat. Bank of Boston,* 871 F.2d 166, 176 (1st Cir.1989) (affirming dismissal of copyright claim against the Commonwealth of Massachusetts on Eleventh Amendment grounds); *Ramírez v. Puerto Rico Fire Service,* 715 F.2d 694, 697 (1st Cir.1983).

 Therefore, the applicability of Eleventh Amendment immunity to Co–Defendant the Commonwealth and to Co–Defendant Sila Calderón, in her official capacity, are apparent. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). However, when an action is brought against a public agency or institution, the application of the Eleventh Amendment depends upon whether the entity "is to be treated as an arm [or alter ego] of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which

---

**6.** As the Court has dismissed Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983, and Articles 1802 and 1803 above, the Court need not analyze the effects of sovereign immunity upon the same. Furthermore, the Court notes that Defendants do not include Plain-

tiff's Title VII claims in their Eleventh Amendment argument.

**7.** In fact, Plaintiff's motion mentions that "someone [sic] of the defendants may get out from the case." (Docket No. 28 at 4).

the Eleventh Amendment does not extend." *Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *see also Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 907; *Ainsworth Aristocrat Intern. Pty. Ltd. v. Tourism Co. of P.R.,* 818 F.2d 1034, 1036 (1st Cir.1987).

This analysis is necessary because a state only has existence through its instrumentalities that carry out its functions and establish its public policy. Therefore, suits brought against non-autonomous instrumentalities of the state would be considered suits against the state itself. *See Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 572; *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Auth.,* 744 F.2d 880, 886 (1st Cir.1984) (finding that a true arm of the state can be protected by the Eleventh Amendment but when the instrumentality is autonomous, like the Puerto Rico Aqueduct and Sewer Authority, Eleventh Amendment immunity does not apply).

> The central factors in the final determination appear to be the degree of autonomy of the governmental entity and whether recovery against it would come from state funds; if the governmental unit simply is functioning as the alter ego of the state in accomplishing some public purpose, it will be treated as the state for purposes of the Eleventh Amendment.

13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3524 at 135–136 (West 2d Ed.1984).

▆▆▆▆ The Court's now turns to determine whether or not Co–Defendants the DOC and the JIA [8] can be considered arms of the Commonwealth. Plaintiff has provided no dispute in considering the DOC and the JIA as arms of the Commonwealth. It is inferred that both the DOC and the JIA perform penal and social services for the community as an arm of the Commonwealth. It is equally implied that these offices do not derive income from any independent source and instead rely upon their budgetary allotments from the Commonwealth treasury. *But see Howard,* 744 F.2d at 886. Therefore, any judgment held against either the DOC, the JIA, Co–Defendant Rivera González, in his official capacity, or Co–Defendant Iglesias Vargas, in his official capacity, would effectively be a judgment against the Commonwealth.

As this Court is bound by an unbroken line of cases whereby the First Circuit has consistently held that the Commonwealth of Puerto Rico is to be considered a "state" for Eleventh Amendment purposes, Plaintiff's claims under 42 U.S.C. § 2000a–1, Title III of the Civil Rights Act of 1991, and her supplemental Commonwealth law claims under Puerto Rico Law No. 17 of April 22, 1988, against Co–Defendants the Commonwealth, the DOC, the JIA, and named Co–Defendants Sila M. Calderón, Víctor Rivera González, and Fernando Iglesias Vargas, in their official capacities cannot remain. *See Negrón Gaztambide v. Hernández Torres,* 145 F.3d 410 (1st Cir. 1998) (vacating judgment against Puerto Rico officials based in part on Eleventh Amendment immunity); *Metcalf & Eddy Inc. v. Puerto Rico Aqueduct & Sewer Authority,* 991 F.2d 935, 939 n. 3 (1st Cir.1993) ("We have consistently treated the Commonwealth of Puerto Rico as if it were a state for Eleventh Amendment purposes."); *De León López v. Corporación Insular de Seguros,* 931 F.2d 116, 121

---

**8.** Subsequently finding that the claims against Co–Defendants Víctor Rivera Gonzalez, and Fernando Iglesias Vargas, in their official capacities, to be claims against the Commonwealth itself.

(1st Cir.1991) ("The [E]leventh [A]mendment, despite the absence of any express reference, pertains to Puerto Rico in the same manner, and to the same extent, as if Puerto Rico were a State."); *Fernández v. Chardón*, 681 F.2d 42, 59 n. 13 (1st Cir. 1982) (Puerto Rico enjoys the full benefits of the Eleventh Amendment.). Accordingly, Co–Defendants the Commonwealth, the DOC, the JIA, and named Co–Defendants Sila M. Calderón, Víctor Rivera González, and Fernando Iglesias Vargas', in their official capacities, Motion to Dismiss is hereby **GRANTED IN PART** and Plaintiff's claims arising under 42 U.S.C. § 2000a–1, Title III of the Civil Rights Act of 1991, and her supplemental Commonwealth law claims under Puerto Rico Law No. 17 of April 22, 1988 against Co–Defendants the Commonwealth, the DOC, the JIA, and named Co–Defendants Sila M. Calderón, Víctor Rivera González, and Fernando Iglesias Vargas, in their official capacities, are hereby **DISMISSED WITH PREJUDICE.**

### D. *Individual Liability Under Title VII*

■ Co–Defendants Víctor Rivera González, José Aponte Pérez, Fernando Iglesias Vargas, Pedro R. Figueroa Pacheco and Luis Mendez's, in their personal capacities, argue that Plaintiff's claims under Title VII should be dismissed as they are not employers as within the meaning of Title VII and that Title VII does not provide for individual liability. In turn, Plaintiff argues that, since neither the Supreme Court of the United States nor the First Circuit Court of Appeals have rendered a decision excluding individual liability under Title VII, Defendants' motion is

frivolous and does not warrant an opposition [9].

Section 703(a) of Title VII states that:

[i]t shall be unlawful employment practice for an *employer* to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e–2 (emphasis added). Title VII's coverage has been extended to proscribe sexual harassment in the workplace. *See Acevedo Vargas v. Colón*, 2 F.Supp.2d 203, 205 (D.Puerto Rico 1998) (referring to the EEOC guidelines which establish the criteria for determining when unwelcome conduct of a sexual nature constitutes sexual harassment for purposes of Section 703 of Title VII). Therefore, Title VII is the applicable federal cause of action addressing claims for sexual harassment in the workplace.

Because Title VII is directed at "employers," determining the meaning of this term is essential to our discussion. Title VII defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day and *any agent of such person.*" 42 U.S.C. § 2000–e (emphasis added). Therefore, because "individual capacity" Co–Defendants are not the employing entity, the Court will focus on whether they can be held liable as agents of the employing entity. *See Rivera Rodríguez v. Police Dept. of Puerto Rico*, 968 F.Supp. 783, 785 (D.Puerto Rico 1997) (Pieras, J.); *Anonymous v. Legal Services Corporation of Puerto Rico*, 932 F.Supp. 49, 50 (D.Puerto Rico 1996) (stating that "resolution of the [individual liability] question depends on how the 'and any agent' language is interpreted."). That is

---

**9.** The Court notes that Plaintiff's argument to not oppose Defendant's argument of individual liability is not nearly as clear as the Court's summary allows it to appear.

to say, the Court must decide whether Title VII, by including in its definition of employer any agent of "a person engaged in an industry affecting commerce who has fifteen or more employees," intended for such agents to be subject to liability for engaging in the proscribed discriminatory behavior. 42 U.S.C. § 2000e–2.

Although the First Circuit has yet to decide whether a Title VII plaintiff may maintain a suit against an individual in his personal capacity, most circuits have held that no personal liability can be attached to agents or supervisors under Title VII. *See Serapion v. Martinez,* 119 F.3d 982 (1st Cir.1997) (declining to address the issue of individual liability); *but see Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 493 (7th Cir.1998) (citing *Williams v. Banning,* 72 F.3d 552 (7th Cir.1995), where no individual liability under Title VII was found); *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 180–81 (4th Cir. 1998) (no individual liability under Title VII); *Wathen v. General Elec. Co.,* 115 F.3d 400, 405–06 (6th Cir.1997) (same); *Haynes v. Williams,* 88 F.3d 898 (10th Cir.1996) (same); *Dici v. Com. of Pa.,* 91 F.3d 542 (3rd Cir.1996) (same); *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2nd Cir.1995) (same); *Gary v. Long,* 59 F.3d 1391 (D.C.Cir.1995) (same); *Lenhardt v. Basic Institute of Technology, Inc.,* 55 F.3d 377 (8th Cir.1995) (same); *Smith v. Lomax,* 45 F.3d 402 (11th Cir.1995) (same); *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994) (same); *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993) (same). Like the majority of the circuit courts, this District has generally held that individual defendants are not liable under Title VII. *See Canabal v. Aramark Corp.,* 48 F.Supp.2d 94, 95–98 (D.Puerto Rico 1999) (Pieras, J.); *Acevedo Vargas v. Colón,* 2 F.Supp.2d at 206; *Pineda v. Almacenes Pitusa, Inc.,* 982 F.Supp. 88, 92–93 (D.Puerto Rico 1997); *Hernández v. Wan-*

*gen,* 938 F.Supp. 1052 (D.Puerto Rico 1996); *Anonymous v. Legal Services Corporation,* 932 F.Supp. at 50–51.

The Court is compelled by the reasoning of previous decisions within this District. Title VII's statutory structure suggests that Congress did not intend to impose individual liability over supervisors or agents of employers. *See Acevedo Vargas v. Colón,* 2 F.Supp.2d at 206. Liability under the statute is triggered when the defendant/employer retains fifteen or more employees. *See* 42 U.S.C. § 2000–e. In establishing this threshold, Congress sought to protect small entities. *See Tomka v. Seiler Corp.,* 66 F.3d at 1319. Thus, " '[i]f Congress decided to protect such entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liabilities to run against individual employees.' " *Acevedo Vargas v. Colón,* 2 F.Supp.2d at 206–07 (citing *Miller,* 991 F.2d at 587).

Further, because liability under Title VII hinges on retaining 15 or more employees, in order to hold an individual liable, the employing entity would have to retain at least 15 employees. If that number is not surpassed, individuals would not be subject to liability. Therefore, individual liability derives from the employer's exposure to liability. The Court finds that conditioning an individual's liability on a factor over which the individual would not generally have control would be nonsensical. Had Congress intended to hold individuals liable, it would have addressed the actions and conditions that would subject them to liability. *Canabal,* 48 F.Supp.2d at 96.

Further, this District has concluded that the tasks mandated to employers under Title VII are applicable to the corporate entities and not to individual supervisors. *See Hernández v. Wangen,* 938 F.Supp. at

1064 (noting that tasks such as maintaining records that shed light on potential unlawful employment practices and posting notices about the provisions of Title VII in conspicuous places on the work premises are undoubtedly tasks associated with corporate entities, not individuals.). Therefore, because Title VII is mostly structured to guide an employer's behavior, the Court finds that Title VII does not provide for individual liability [10].

For this reason, the Court hereby **GRANTS IN PART** Co–Defendants Víctor Rivera González, José Aponte Pérez, Fernando Iglesias Vargas, Pedro R. Figueroa Pacheco and Luis Mendez's, in their personal capacities, Motion to Dismiss and hereby **DISMISSES WITH PREJUDICE** Plaintiff's Title VII claims against Co–Defendants Víctor Rivera González, José Aponte Pérez, Fernando Iglesias Vargas, Pedro R. Figueroa Pacheco and Luis Méndez, in their personal capacities.

#### E. *Service of Process*

 Finally, Co–Defendants Myriam Quiñones and José Lozada Medina argue that Plaintiff did not serve them with summons within the 120–day period prescribed by Fed.R.Civ.P. 4(m) and that Plaintiff's claims against them should be dismissed. Plaintiff acknowledges that Co–Defendants Quiñones and Lozada Medina were served out of term but argues that there was "good cause" for the delay.

Rule 4(m) of the Federal Rules of Civil Procedure provides in pertinent portion:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the compliant, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (West 2002). Plaintiff filed her complaint on March 12, 2001 (docket No. 1). Plaintiff amended her complaint on June 7, 2001, but did not request further summons (docket No. 4) [11]. Therefore, Plaintiff effectively had until July 10, 2001 to effectuate service. However, Plaintiff did not effectuate service on Co–Defendants Quiñones and Lozada Medina until September 25, 2001.

The First Circuit has held that "if a plaintiff fails to properly serve a named defendant within 120 days after filing a complaint, he must show 'good cause why such a service was not made within that period' or face dismissal." *Benjamin v. Grosnick*, 999 F.2d 590, 591 (1st Cir.1993) (quoting Fed.R.Civ.P. 4(j) [12]). The Court deciphers from Plaintiff's opposition that her process server was taken to the hospital to give birth and took the relevant summons with her and that other process servers served Co–Defendants Quiñones

---

**10.** The Court notes it has found previously that an "alter-ego" exception, to the rule against individual liability under Title VII, exists. See *Canabal*, 48 F.Supp.2d at 97; *Santiago*, 33 F.Supp.2d at 102. However, in the case at hand, Plaintiff has not attempted to find, in her complaint nor in her opposition, that "individual capacity" Co–Defendants are an "alter-ego" of Plaintiff's employer. For this reason the Court need not enter this analysis.

**11.** The Court notes that Plaintiff was granted leave to amend the complaint due to a typographical error found in the original and not to add any defendants (docket No. 3).

**12.** The Court notes that former Fed.R.Civ.P. 4(j) has been since superseded by Fed.R.Civ.P. 4(m).

and Lozada while the original process server was in labor.

The Court notes that Co–Defendants Quiñones and Lozada Medina were not served until more than two months after the 120–day period had expired. While the undersigned does not pretend to be an obstetrician, the Court highly doubts that Plaintiff's original process server was in labor the entire time and if she were, the Court is puzzled as to why Plaintiff did not seek an extension of time to serve Defendants. Furthermore, as Plaintiff has argued that other process servers were utilized to ultimately serve process, the Court fails to understand why it took more than two months for the other process servers to serve process, as well. Ultimately, the Court finds that Plaintiff has not demonstrated "good cause" for the delay in serving Co–Defendants Quiñones and Lozada Medina. For this reason the Court hereby **GRANTS** Co–Defendants Quiñones and Lozada Medina's motions to quash summons. Plaintiff's claims against the same are hereby **DISMISSED WITHOUT PREJUDICE.**

## V. CONCLUSION

For the foregoing reasons, The Court hereby **DENIES** Defendants' "Motion to Strike Plaintiff's 'Motion In Opposition To Defendant's Motion to Dismiss" (docket No. 29a); the Court hereby **GRANTS IN PART** Co–Defendants Pedro R. Figueroa Pacheco and Luis Méndez's Motions to Join and Adopt Defendants' Motion to Dismiss (docket Nos. 22 and 29); Plaintiff's claims against Co–Defendants Quiñones and Lozada Medina are hereby **DISMISSED WITHOUT PREJUDICE**; Plaintiff's claims arising under 42 U.S.C. §§ 1981 and 1983 and under Articles 1802 and 1803 of the Puerto Rico Civil Code are hereby **DISMISSED WITH PREJUDICE** against all Defendants; Plaintiff's claims

arising under 42 U.S.C. § 2000a–1, Title III of the Civil Rights Act of 1991, and her supplemental Commonwealth law claims under Puerto Rico Law No. 17 of April 22, 1988, against Co–Defendants the Commonwealth, the DOC, the JIA, and named Co–Defendants Sila M. Calderón, Víctor Rivera González, and Fernando Iglesias Vargas, in their official capacities, are hereby **DISMISSED WITH PREJUDICE**; and Plaintiff's Title VII claims against Co–Defendants Víctor Rivera González, José Aponte Pérez, Fernando Iglesias Vargas, Pedro R. Figueroa Pacheco and Luis Méndez, in their personal capacities are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**