**Maricely VELEZ–SOTOMAYOR, Ruben Rodriguez Guadalupe, and their conjugal society Plaintiffs**

v.

**PROGRESO CASH AND CARRY, INC., and Juan Marroig Defendants**

**No. CIV. 01–1678(JAG/ADC).**

United States District Court, D. Puerto Rico.

May 7, 2003.

Osvaldo Pérez–Marrero, San Juan, for plaintiff.

Marie L. Cortés–Cortés, Andrés J. Colberg–Trigo, Lespier & Muñoz–Noya, San Juan, for defendant.

### OPINION AND ORDER

DELGADO–COLON, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c) the parties have consented to final entry of judgment by a United States Magistrate Judge. *See also Local Rule 505(3)*. An Order of Reference was entered on May 24, 2002 (**Docket No. 21**). Now before the Court is Defendants' Motion for Summary Judgment, Plaintiffs' opposition thereto and Defendants' reply (**Docket Nos. 47, 48, 52**). For the reasons explained below, upon consideration of the pleadings of the parties, and the attached exhibits, the motion before the Court is hereby **GRANTED** in part and **DENIED** in part.

### I. Background

Plaintiffs filed their complaint on May 22, 2001, pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991, and 42 U.S.C. § 2000e–2(m). Plaintiffs also raise supplemental claims pursuant to 29 L.P.R.A. § 146 *et seq.*, 29 L.P.R.A. § 185a, and 31 L.P.R.A. §§ 5141, 5142. Plaintiff Maricely Vélez–Sotomayor (hereafter "Vélez") alleges that while employed by Defendant Progreso Cash and Carry, Inc. (hereafter "Progreso") as a cashier, she was subject to religious discrimination and discrimination on the basis of her pregnancy. More particularly, she alleges that once she became pregnant, Progreso knowing that Vélez was a Jehovah's Witness, required all cashiers to celebrate Christmas by wearing Christmas hats during the holiday season. She informed her superior that she would not wear the Christmas hat due to her religious beliefs. Thereafter, during a meeting between Vélez and Juan Marroig (hereafter "Marroig"), the owner of Progreso, Vélez was informed that she was suspended from work, without pay, until the holiday season ended. Vélez was in-formed that the reason for her suspension was her refusal to wear a Christmas hat. At the time Vélez was six months pregnant. She alleges that the reason given for the suspension was a pretext. When the holiday season ended, Vélez returned to work to find that "she was no longer wanted" and that all maternity benefits had been suspended.

Defendants subsequently moved to dismiss the complaint, said motion being denied on May 24, 2002 (**Docket No. 22**). Defendants now move for summary judgment on the basis that plaintiffs lack competent evidence to sustain the claims of discrimination based upon religion and pregnancy (**Docket No. 47**). More particularly, defendants assert that Vélez cannot claim disparate treatment for having been pregnant on November 30,1999, because there were other employees who were pregnant at the time; the requirement of wearing a Santa Clause cap did not affect Vélez's religious beliefs; and defendants did not have any discriminatory animus against Vélez. Defendants also move the court for dismissal of the Title VII claims against defendant Juan Marroig on the basis that there is no individual liability under Title VII. Finally, defendants move for dismissal of plaintiffs' Law 80 and Law 100 claims on the basis that the burden shifting framework is unconstitutional.

### II. Uncontested Facts

Progreso is a corporation engaged in the business of retail and sale of foods and other goods to other business and restaurants in Ponce, Puerto Rico. Vélez was employed as a part-time employee with Progreso from August 15, 1996, until November 30, 1999. Her duties included the position of cashier. All the cashiers, including Vélez, were required to wear a vest, an identification card or tag as part of the dress code established by Progreso.

In 1999, all the cashiers were required to wear a Santa Claus cap during the Christmas season.

On the morning of November 30, 1999, Vélez appeared for work and refused to wear the Santa Claus cap. She was told by Rosa Nieves, Cashiers Supervisor, that Marroig had stated that if she [Vélez] decided not to wear the cap, to punch out and go upstairs to meet with Marroig. On that date, Vélez told Marroig that being a Jehovah Witness she did not celebrate Christmas and wearing the hat, as required, was contrary to her religious beliefs. Vélez was raised in the Jehovah's Witness religion, was baptized in 1989 and carries a blood card identifying herself as a Jehovah's Witness. During her deposition Vélez testified that the cap was part of the Christmas celebration and wearing it was against her religious beliefs. Rosa Nieves explained to plaintiff Vélez that the cap was related to Santa Claus and that it was not related with the birth of Christ.

As of November 30, 1999, Vélez was six months pregnant and Marroig was aware of this fact. During that time there were other pregnant employees at Progreso.

Vélez requested unemployment benefits on December 6, 1999. She filed a charge before the Anti–Discrimination Unit against Progreso on December 9, 1999, alleging discrimination based upon religion. Vélez was declared eligible for unemployment benefits on December 22, 1999.

Vélez returned to Progreso after Three Kings Day (January 6, 2000) and requested work hours. She was informed that she was no longer needed as they were in a slow season. In late February or early March, Vélez went to Progreso to have her maternity benefits form filled out. Vélez was informed that awarding of benefits remained the responsibility of the Department of Labor & Unemployment as Vélez was no longer working and/or receiving unemployment benefits.[1]

Vélez gave birth on March 19, 2000, to a son. Vélez filed a second complaint with the Anti–Discrimination Unit for religious and pregnancy discrimination on April 12, 2000. Her son, who had become ill following his birth, was hospitalized in Puerto Rico and Florida, respectively, before succumbing to his illness in Florida when he was 13 months old. There is no evidence or claim pointing to any relationship between employment conditions and the illness of plaintiff's son.

### III. Analysis

#### A. Legal Standard

A motion for summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Wolf v. Gruntal & Co.,* 45 F.3d 524, 527 (1st Cir.1995); *National Amusements, Inc., v. Dedham,* 43 F.3d 731, 735 (1st Cir.1995). The First Circuit delineated the manner in which Federal Rule of Civil Procedure 56, functions:

> Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists. As to issues on which the summary judgment target bears the ultimate bur-

---

**1.** The Disability Act provides for payment of compensation to workers for the loss of wages as a result of disability due to illness, which includes pregnancy, or accident not connected with employment. 11 L.P.R.A. §§ 201, 202.

den of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995) (citations and some internal punctuation marks omitted).

The Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). While carrying out that task, the Court can safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Intern., Inc.*, 229 F.3d 49, 53 (1st Cir.2000) (quoting *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

Once a movant has made a preliminary showing that there exists no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law, the nonmovant bears the burden to show the existence of a genuine material issue. *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir.1996). The non-movant cannot meet this burden by mere allegation or denial of the pleadings. Fed. R.Civ.P. 56(e). Nor can the nonmoving party avoid summary judgment by relying on conclusory allegations, improbable inferences, unsupported speculation, or "[b]rash conjecture coupled with the earnest hope that something concrete will materialize." *J. Geils Band Employee Benefit Plan*, 76 F.3d at 1251 (quoting *Dow v. United Bhd. of Carpenters*, 1 F.3d 56, 58 (1st Cir.1993)). "If no genuine issue of material fact emerges from this perscrutation, then the case may be ripe for summary adjudication." *Suárez*, 229 F.3d at 53.

## B. Individual Liability Under Title VII

■ Defendants ask the Court to dismiss the Title VII claims against defendant Juan Marroig on the basis that Title VII does not provide for individual liability, as a matter of law. The First Circuit has yet to resolve the issue of individual liability in Title VII cases.[2] However, other circuits have determined there is no personal liability under Title VII[3] and, in

**2.** See: *Serapión v. Martínez*, 119 F.3d 982 (1st Cir.1997) (declining to address the issue of individual liability).

**3.** See: *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir.1998) (citing *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995), where no individual liability under Title VII was found); *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir.1998) (no individual liability under Title VII); *Wathen v. General Elec. Co.*, 115 F.3d 400, 405–06 (6th Cir.1997) (same); *Haynes v. Williams*, 88 F.3d 898 (10th Cir.1996) (same); *Dici v. Com. of Pa.*, 91 F.3d 542 (3d Cir.1996) (same); *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2nd Cir.1995) (same); *Gary v. Long*, 59 F.3d 1391 (D.C.Cir.1995) (same); *Lenhardt v. Basic Inst. of Tech., Inc.*, 55 F.3d 377 (8th Cir.1995) (same); *Smith v. Lomax*, 45 F.3d 402 (11th Cir.1995) (same); *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir.1994) (same); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583 (9th Cir. 1993) (same).

several cases in this District, it has been held that no personal liability exists under Title VII. Like the majority of the circuit courts, this District has generally held that individual defendants are not liable under Title VII. *See Padilla–Cintrón v. Roselló–González,* No. 01–1294(JP), 247 F.Supp.2d 48, 2003 WL 681865 (D.P.R. Feb.19, 2003); *Canabal v. Aramark Corp.,* 48 F.Supp.2d 94, 95–98 (D.P.R.1999); *Acevedo Vargas v. Colón,* 2 F.Supp.2d 203, 206 (D.P.R.1998); *Pineda v. Almacenes Pitusa, Inc.,* 982 F.Supp. 88, 92–93 (D.P.R.1997); *Hernández v. Wangen,* 938 F.Supp. 1052 (D.P.R. 1996); *Anonymous v. Legal Services Corp.,* 932 F.Supp. 49, 50–51 (D.P.R.1996).

■ The undersigned agrees with the reasoning of previous decisions in this District. The statutory structure of Title VII suggests that Congress did not intend to impose individual liability over supervisors or agents of employers. *See Acevedo Vargas,* 2 F.Supp.2d at 206. Liability under the statute is triggered when the defendant/employer retains fifteen or more employees. *See* 42 U.S.C. § 2000e. It follows that " '[i]f Congress decided to protect such entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liabilities to run against individual employees.' " *Acevedo Vargas,* 2 F.Supp.2d at 206–07 (citations omitted). Indeed, had Congress intended to hold individuals liable, it would have addressed the actions and conditions that would subject them to liability. *Canabal,* 48 F.Supp.2d at 96. More, it has been determined in this District that the tasks mandated to employers under Title VII are applicable to the corporate entities and not to individual supervisors. *See Hernández v. Wangen,* 938 F.Supp. at 1064 (noting that tasks such as maintaining records that shed light on potential unlawful employment practices and posting notices about the provisions of Title VII in conspicuous places on the work premises are undoubtedly tasks associated with corporate entities, not individuals).

Accordingly, the undersigned joins the other decisions in this District and finds that Title VII does not provide for individual liability. Therefore, defendant Juan Marroig's motion for summary judgment is **GRANTED** and the Title VII claims brought against him, individually, are dismissed.

## C. Religious Discrimination

■ Tile VII provides that "it shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e–2(a). "Title VII's capacious definition of 'religion' includes all aspects of religious observance and practice, as well as belief....' " *EEOC v. Unión Independiente de la Autoridad de Acueductos Y Alcantarillados de Puerto Rico,* 279 F.3d 49, 56 (1st Cir.2002); *see also* 42 U.S.C. § 2000e(j); 29 C.F.R. § 1605.1 ("[R]eligious practices ... include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."). Religious beliefs protected by Title VII need not be "acceptable, logical, consistent, or comprehensible to others...." *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981).

■■ To establish a prima facie case of religious discrimination based on a failure to accommodate, plaintiff Vélez must show that "(1) a bona fide religious practice conflicts with an employment requirement; (2) she brought the practice to defendant Progreso's attention; and (3) the religious

practice was the basis for the adverse employment decision." *Unión Independiente,* 279 F.3d at 55 (citations omitted). Once Vélez establishes a prima facie case, the burden shifts to Progreso to show that it made a reasonable accommodation of the religious practice or show that any accommodation would result in undue hardship. *Id.* (citations omitted).

Initially, the undersigned notes that the Jehovah's Witnesses religion has been recognized by various courts. *See Weber v. Roadway Express, Inc.,* 199 F.3d 270 (5th Cir.2000) (no Title VII violation when company failed to accommodate Jehovah's Witness truck driver who objected to making overnight runs with a female partner, inasmuch as "skipping over" trucker driver when scheduling said runs would impose undue hardship); *Gavin v. Peoples Natural Gas Co.,* 613 F.2d 482 (3d Cir.1980) (genuine issue of material fact existed as to whether employer accommodated Jehovah's Witness employee through its offer of reinstatement in position which would not require him to raise and lower the flag, an act which violated his religious convictions); *Parmlee v. Connecticut Dep't of Revenue Services,* 160 F.Supp.2d 294 (D.Conn.2001) (Jehovah's Witness employee failed to establish a prima facie cause of employment discrimination when he did not show that any adverse employment decisions occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in a protected class (i.e., as a Jehovah's Witness)); *Palmer v. Board of Educ.,* 466 F.Supp. 600 (N.D.Ill.1979) (the activities of a kindergarten teacher Jehovah's Witness in refusing to teach her students the pledge of allegiance and to participate in holiday activities and songs were not constitutionally protected); *Kentucky Comm'n on Human Rights v. Lesco Manuf.,* 736 S.W.2d 361 (Ky.App.1987) (Secretary Jehovah's Witness who refused to answer phone with

"Merry Christmas" based upon religious beliefs was discriminated against based upon her religion).

Defendants contend that Vélez fails to state a claim under Title VII based upon religious discrimination. More particularly, they argue that Vélez did not inform her employer of her religious beliefs, and she failed to explain how the wearing of a Santa Claus cap conflicts with her religious beliefs of not celebrating Christmas. Conversely, plaintiffs argue that they have met the prima facie requirements for religious discrimination, inasmuch as Vélez is a practicing Jehovah's Witness, she indicated to Marroig that she was a Jehovah's Witness and wearing the Santa Claus hat was contrary to her religious beliefs and that, as a result of her not wearing the hat, she was dismissed. Plaintiffs further contend that the defendants could have made a reasonable accommodation, inasmuch as there were other duties and positions available within the store that she could perform.

Defendants argue that Vélez did not reasonably notify Marroig of her religious beliefs. They assert that Vélez lacks admissible evidence to establish that Marroig knew of Vélez's religious beliefs and/or membership before the date of November 30, 1999. Defendants concede that it is arguable that employees Ada Marroig or Rosa Nieves' knowledge of Vélez's religious membership sustains that Marroig knew of her religious membership. They argue, however, that Vélez lacks competent evidence to link these persons' knowledge to that of Marroig's.

First Circuit case law required that Vélez inform Progreso or bring to Progreso's attention her religious beliefs, but makes no mention of "reasonable notice." *See Unión Independiente,* 279 F.3d at 55. The record reflects that the defendants

had knowledge of Vélez's religious beliefs. Marroig testified regarding the events of November 30, 1999, as follows:

> [T]hey all decide to put on Santa Claus hat and Rosa Nieves called me and told me everyone but one was wearing it because she said due to her religion she was not going to wear it and I told her, pull her out to talk to her, that I think I can convince her to wear the hat and to stop well... Because the guys, well, in some aspects, well they want to stand out I thought that it was that and I wanted to talk to her, I didn't, I didn't think the problem was religious.
>
> Q. But that was what was indicated to you, right? that it was religious.
>
> A. Well, yes. Because she had told her that, and I said to her bring her over here to see if ... to see what I can do., well, to convince her.
>
> Q. And, what happened?
>
> A. Well, I told you before, well she said that because of religious matters, that she was a Jehova [sic][W]itness and that they don't observe Christmas and I told her that we were not celebrating it, a repetition more or less of what I told her.

**Docket No. 48, Ex. 5, pp. 33–34.**

Vélez also contends that prior to November 30, 1999, she indicated to Ada Marroig, the cashier supervisor, that she would not be wearing the Santa Claus cap because she was a Jehovah's Witness and her religion does not celebrate Christmas. Plaintiff's Contested Statement of Facts No. 1h. Reportedly, Ada Marroig told Vélez it was "okay." *Id.*

Contrary to the position of defendants, the record reflects that there was notice of Vélez's religious beliefs and of her objection to wearing the Santa Claus cap. Indeed, Marroig testified that he was told by Rosa Nieves that Vélez would not wear the Santa Claus cap because of her religion but he wanted to convince her to wear the cap because they "were not celebrating Christmas."

With regard to her explanation of why wearing a Santa Claus cap conflicts with her religious beliefs, defendants argue that Vélez's depositional statements do not establish there was a conflict between her religious belief of not celebrating Christmas and the cap. Defendants point to Vélez's statements that Christmas is or relates to the birth of Jesus, but claims that the Santa Claus cap did not represent the birth of Jesus. Defendants contend that using Vélez's rationale the Santa Claus cap does not entail the celebration of Jesus' birth.

■ The requirement that an employee have a "bona fide religious belief" is an essential element of a religious accommodation claim, inasmuch as Title VII does not mandate that an employer accommodate what amounts to a "purely personal preference." *See Unión Independiente,* 279 F.3d at 55–56 (citations omitted). In order to satisfy this element, Vélez must demonstrate that the belief or practice is religious and that her belief is sincerely held. *Id.* at 56.

■ "While the 'truth' of a belief is not open to question, there remains the significant question of whether it is 'truly held.'" *Id.* (quoting *United States v. Seeger,* 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)). "The element of sincerity is fundamental, since 'if the religious beliefs that apparently prompted a request are not sincerely held, there has been no showing of a religious observance or practice that conflicts with an employment requirement.'" *Id.* (quoting *EEOC v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1575 (7th Cir.1997)). As the First Circuit has noted, a finding on this issue generally will depend on the factfinder's assessment

of the employee's credibility. *Id.* (citations omitted). More so, since credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions, they ordinarily should be reserved "for the factfinder at trial, not for the court at summary judgment." *Id.* (quoting *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 49 (1st Cir.1999); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726, at 446 (3d ed. 1998) ("Clearly, if the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial") (footnote omitted)).

While defendants do not directly state it, their arguments appear to be that Vélez did not have a "bona fide religious belief" and that it is sincerely held. The undersigned reaches this conclusion based upon the defendant's argument to the effect that Vélez has failed to explain how requiring her to wear a Santa Claus cap conflicts with her religious beliefs of not celebrating Christmas. What is inescapable, and what defendants omit, is that regardless of the symbol, be it a Santa Claus hat, a Christmas tree, or a nativity scene, Vélez does not celebrate Christmas due to her religious beliefs. Summary judgment stage is not the time to determine Vélez's credibility with regard to her religious beliefs. This issue is better left for a factfinder at the time of trial.

Finally, defendants argue that Vélez lacks competent evidence to persuade a jury and the Court that defendants acted intentionally. They point to the fact that Progreso required all cashiers to wear the Santa Claus cap during the holiday season. Defendants fail to mention Vélez's position or testimony that when she refused to wear the Santa Claus cap based upon her religious beliefs she was referred to Marroig who was to attempt to convince her to wear the hat and when she refused she was told to go home and return after the Christmas season. That act—sending her home—could be construed as an intentional act.

There remain genuine issues of material fact as to whether Vélez's religious practice resulted in an adverse employment decision. Based upon the foregoing analysis, defendant's for summary judgment on the issue of religious discrimination is **DENIED**.

### D. Pregnancy Discrimination Act

The Pregnancy Discrimination Act of 1978 amended Title VII to protect women from discrimination on the basis of childbirth, pregnancy, and related medical conditions. 42 U.S.C. § 2000e(k). *Vázquez–González v. K–Mart Corp.*, 940 F.Supp. 429, 434 (D.P.R.1996). Hence, it is well settled under Title VII that an employer may not discharge an employee based on the categorical fact of her pregnancy. *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 423 (1st Cir.1996). "By the same token, since a short-term inability to work is bound up with the very nature of pregnancy and childbirth, that disability is a pregnancy-related condition within the meaning of 42 U.S.C. § 2000e(k), and Title VII thus prohibits an employer from dismissing an employee in retaliation for taking an authorized maternity leave." *Id.* at 424. An employer, however, may discharge an employee while she is pregnant if it does so for legitimate reasons unrelated to her pregnancy. *Id.* Accordingly, "an employer may discharge an employee while she is on a pregnancy-induced leave so long as it does so for legitimate reasons unrelated to her gravidity." *Id.*

Based on the foregoing, the First Circuit has concluded that "Title VII man-

dates that an employer must put an employee's pregnancy (including her departure on maternity leave) to one side in making its employment decision—but the statute does not command that an employer bury its head in the sand and struthiously refrain from implementing business judgments simply because they affect a parturient employee." *Id.* Title VII requires a causal nexus between the employer's state of mind and the protected trait—pregnancy. *Id.* at 425.

 A Title VII sex discrimination claim may be proven with direct evidence of discrimination, such as "an admission by the employer that it explicitly took the actual or anticipated pregnancy into account in reaching an employment decision." *F.W. Morse*, 76 F.3d at 421. "Such 'smoking gun' evidence is rare, but sex discrimination may also be proven with circumstantial evidence." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir.2000) (citing *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 428–29 (1st Cir.2000)). When considering circumstantial evidence of sex discrimination, Courts apply a three-stage, burden-shifting framework as outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). This analysis "is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Burdine*, 450 U.S. at 255 n. 8, 101 S.Ct. 1089.

Defendants contend that Vélez fails to state a claim of discrimination based upon her pregnancy pursuant to Title VII. They contend that she has no direct evidence of discrimination based upon her pregnancy. They also argue it is unclear under what

theory Vélez proceeds, disparate treatment or disparate impact. They posit that the only basis for Vélez's pregnancy discrimination claim is the fact that she was pregnant when she refused to wear the Santa Claus cap. Plaintiffs, on the other hand, argues that Vélez has met the *prima facie* requirements for a pregnancy discrimination claim.

 To establish the existence of a *prima facie* case Vélez must show that: (1) she is pregnant (or has indicated an intention to become pregnant), (2) her job performance has been satisfactory, but (3) the employer nonetheless dismissed her from her position (or took some other adverse employment action against her) while (4) continuing to have her duties performed by a comparably qualified person. *F.W. Morse*, 76 F.3d at 421; *see also Gorski v. New Hampshire Dep't of Corr.*, 290 F.3d 466, 475 (1st Cir.2002). Once a *prima facie* case is established, then at the second stage, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. *Hicks*, 509 U.S. at 506–07, 113 S.Ct. 2742; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Rodríguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 19 (1st Cir.1999). The employer's burden is merely a burden of production; the employee maintains the burden of proof throughout. *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742. If the employer meets its burden, the presumption of discrimination evaporates. *Id.* If the employer presents a legitimate and non-discriminatory reason for its action, then at the third stage the burden shifts back to the plaintiff, at which time she must show that the reason advanced by the employer is merely a pretext for intentional discrimination based on her pregnancy. *See Hicks*, 509 U.S. at 507–508, 113 S.Ct. 2742; *Rodríguez–Cuervos*, 181 F.3d at 19.

Vélez contends that there is direct evidence of discrimination, pointing to a statement made by Marroig during his deposition that he "did not want to go to the cashiers' area because there was a pregnancy epidemic" (**Docket No. 48, Ex. 5**). Vélez argues that this statement was made during the time that she was pregnant and close to the time that she was discharged. Defendants argue that the remark of Marroig is merely a stray statement. Upon reviewing the statement and the context in which given, a jury may well believe that, as alleged, Marroig was alluding to a time in which there were so many pregnant employees that they all used to joke about it. As is well established, "[w]hile perhaps probative of discrimination, stray remarks do not satisfy a plaintiff's burden of proving discrimination by direct evidence." *See Ayala–Gerena v. Bristol Myers–Squibb Co.* 95 F.3d 86, 96 (1st Cir.1996). Regardless, Vélez also contends that she has met the *prima facie* requirements for a Title VII pregnancy discrimination claim.

▉▉▉ Vélez contends she has met her burden of proving a *prima facie* case in that she is a member of a protected class as she was six months pregnant at the time of her discharge, her job performance was satisfactory and had never been questioned, and an adverse employment action was taken against her as she was discharged. Thus, prongs one through three have been met by plaintiff. With regard to the forth prong of the *McDonnell Douglas* test's threshold, a complainant can satisfy this by showing that the employer had a continued need for "someone to perform the same work after [the complainant] left". *Alvarez Cabrera v. Trataros Constr., Inc.,* 184 F.Supp.2d 149, 152 (D.P.R.2002) (citations omitted). Indeed, it is not necessary that Vélez prove her job was filled by a person not possessing the

protected attribute. *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 155 (1st Cir.1990). Vélez's depositional testimony reflects that cashiers were always needed at Progreso and that during the months of November and December (the Holiday season), Progreso sold more items than it normally would. Vélez's testimony to some extent is corroborated by the deposition testimony of Rosa Nieves, who testified that the Christmas season is an active period for Progreso (**Docket No. 48, Ex. 5, p. 44**). Defendants did not demonstrate that this testimony was baseless and from the same it could be reasonably inferred that Vélez, as in previous years, was occupying a position that needed to be covered.

Vélez refers to her answers to interrogatories to describe the way she was treated while pregnant. For example, Vélez claims that while pregnant she was forced to stand up during the entire work hours, her request for a chair or high stool was denied, and that her supervisor complained that she went to the bathroom too often. Defendants contend that the problem with Vélez's submission of these facts lies on the fact they were not reinstated or asserted during her deposition, which was taken subsequent to the time of the answers to interrogatories. While that may be the case, the fact remains that these answers to interrogatories were sworn to by Vélez and are part of the evidence to be considered.

Defendants also argue that the matters stated in the answer to interrogatories and the events depicted by Vélez do not reach the level of pregnancy discrimination. Defendants allude to testimony by Vélez at her deposition which reflects that two of the employees, who were pregnant at the same time as she, continued to be employed by Progreso.[4] Rosa Nieves also

---

4. In support of her pregnancy discrimination claim, Vélez has requested to have consid-

testified at her deposition that in the previous year cashiers wore Santa Claus hats on a voluntary basis and there was no retaliation against cashiers who did not wear one. However, when the hat, at the cashiers' requests, was made part of the uniform or was mandatory and Vélez refused to wear it (all the while being pregnant), she was discharged. Vélez claims she was told to go home, collect unemployment benefits and return after Christmas. More so, in her deposition testimony, upon which defendants rely, Vélez asserts that when she returned to Progreso after Christmas she was told she was not needed and there was no job for her as it was the slow season. This averment is also disputed by defendants' evidence which highlights it was plaintiff Vélez who did not want to return to work in order to be able to care for her ill son. When she returned in late February or early March to have the forms for her maternity benefits filled out, she was told that she was not eligible since she no longer worked for Progreso.

Plaintiffs posit that defendants' explanation to Vélez that she was no longer needed due to the slow season was merely a sham to disguise their discriminatory animus towards Vélez. Plaintiffs note that three employees quit in November 1999, and that two employees quit in February 2000, positions which Vélez claims she could have filled but were never offered to

her. Nonetheless, there is no evidence on record indicating those positions were ever filled or that the employer continued to have a need for said positions.

Defendants advise the Court that they rely solely upon Vélez's depositional testimony to support their position that she cannot sustain her claim of pregnancy discrimination. They argue that Vélez failed to make a prima facie case of discrimination as she was not the only pregnant worker at Progreso. They contend that there is nothing for a rational factfinder to conclude that Vélez was treated differently from other employees. Defendants point out they did not explain or set forth a nondiscriminatory reason because their position is that the plaintiffs failed to make a *prima facie* case. Hence, they did not need to come forward with a "nondiscriminatory" explanation.

■ At this initial stage, plaintiffs' burden is minimal. *Alvarez Cabrera*, 184 F.Supp.2d at 152 (citing *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 108 (1st Cir. 1988)). Taking all inferences in plaintiffs' favor, the Court must consider whether there is a genuine issue of material fact as to whether Vélez's pregnancy was the reason for her termination. At trial, a jury could accept Vélez's position that she was terminated because of her pregnancy. Vélez may establish that Progreso's reasons for her dismissal are a pretext for discrimination in a number of ways. She may

ered a resignation letter, purportedly signed by a co-worker named Migdalis Mercado. Said letter, which is typewritten appears unsigned and stands for the proposition Ms. Mercado considered "given her pregnancy and the work environment during the last months" that it was best for her to resign her job with Progreso. That letter is dated February 12, 2001, that is, over one year after plaintiff Vélez had ceased working for Progreso (**Docket No. 48**, Ex. 22). Plaintiff Vélez has not demonstrated the relevancy of this letter either in terms of context or time

frame. The work environment to which Ms. Mercado alludes is not described by her and the time frame to which reference is made in the letter is vaguely described as "the last months"—prior to February 2001. It is plaintiff Vélez who proffers and characterizes Ex. 22 as evidence that "there were other pregnant employees who left due to bad working conditions" (**Docket No. 48**, p. 7, par. 15: Plaintiff's Memorandum of Law). We understand this document's (Ex. 22) relevancy is highly questionable and not admissible into evidence.

show that discriminatory comments were made by the key decision maker or those in a position to influence the decision maker. *Mulero–Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 675–76 (1st Cir.1996). Here, there is evidence that her supervisor made comments about a "pregnancy epidemic". There is evidence that comments or criticism were made that Vélez went to the bathroom too frequently as a result of her pregnancy. Vélez may also point to the fact she was denied authorization to perform her duties as a cashier while sitting, at least at intervals of time, on a high stool. Vélez may well highlight actions taken by Progreso when she was terminated and defendants' reluctance to pay maternity benefits. Ultimately, plaintiff Vélez may argue that her pregnancy, coupled with her reluctance to wear the Santa Claus hat due to her religious belief, taken as an aggregate, led to her termination. Accordingly, it is concluded that plaintiffs have produced evidence of a prima facie case of discrimination which triggers a rebuttable presumption of discrimination.

█ The burden of production now shifts to defendants to articulate a legitimate, nondiscriminatory reason for its adverse employment action. After the full presentation of evidence at trial, the jury may also find that Progreso proffers a legitimate reason for dismissal. In the normal course of events the Court would go on to examine the defendants' reasons for their actions. This case is unusual, however, in that defendants specifically declined to set forth a reason for the employment action,[5] instead relying on their position that plaintiffs failed to make a *prima facie* case. Accordingly, the Court's inquiry stops here. Therefore, viewing all the facts together, and construing them in the light most to favorable to Vélez, it is considered that plaintiffs have raised a genuine issue of material fact as to the actual reason for plaintiff Vélez's dismissal and this allows her to present her pregnancy discrimination case at trial. Therefore, defendants' Motion for Summary Judgment that Vélez has no claim under the Pregnancy Discrimination Act is **DENIED.**

### E. LAW 100/LAW 80

█ The last request by defendants is that the Court dismiss the claims brought by plaintiffs pursuant to Law 80 and Law 100. Defendants assert the claims are precluded by *Morales v. Nationwide Ins.*, 237 F.Supp.2d 147 (D.P.R.2002), which found the burden-shifting framework of Law 100 in correlation with Law 80 unconstitutional because it violates a defendant's due process. The defendants ask the Court to apply the same legal reasoning as that used in *Morales.* Plaintiffs respond that the holding in *Morales* found Law 100 unconstitutional only as applied for that defendant in that case. Plaintiffs then go on to recite the facts of this case as they apply to Law 100 and Law 80.

In *Morales*, the Court discussed the relevant provisions of Law 100,[6] its burden

---

**5.** From scrutinizing the record, several possible legitimate reasons were asserted to explain defendants' decision to terminate plaintiff Vélez. For example, defendants seem to assert, though not clearly, that: a) the Santa Claus hat had no religious connotation and was not to be linked to the Christmas celebration; b) it was plaintiff Vélez who refused to get back to work in spite of being called by Marroig; c) after January 7th there was a slow season and an additional cashier was,

allegedly, no longer needed. The fact remains that though these arguments may be gleaned from the record, there is no supporting evidence except for the proposition that plaintiff Vélez, when called to resume her duties, refused to do so because of personal reasons. Still, under this scenario, it remains the jury's province to determine credibility of the parties.

**6.** "Any employer who discharges, lays off or discriminates against an employee regarding

shifting provisions and its correlation with Law 80.[7] The Court explained that initially the burden-shifting framework in joint Law 100 and Law 80 claims was as follows:

> [T]he Law 80 presumption is triggered when the plaintiff alleges unjustified dismissal and proves by a preponderance of the evidence that he was actually or constructively discharged. The burden then shifts to the employer to prove by a preponderance of the evidence that it had just cause to dismiss the employee. If the employer fails to make this showing, the Law 100 presumption of discrimination is triggered, shifting the burden to the employer of proving by a preponderance of the evidence that the otherwise-unjustified dismissal was not motivated by discriminatory animus.

*Morales*, 237 F.Supp.2d at 153–54 (quoting *Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling*, 152 F.3d 17, 28 (1st Cir.1998)).

*Morales* then explained that the Puerto Rico Supreme Court provided a different interpretation of the burden-shift framework in *Díaz Fontánez v. Wyndham Hotel Corp.*, 2001 WL 1346759 (P.R.2001). According to the Puerto Rico Supreme Court, an employee who brings a claim under both Law 100 and Law 80 must allege wrongful discharge, prove that he was discharged without just cause, and show some basic fact substantiating the type of discriminating alleged. *Díaz Fontánez*, 2001 WL 1346759, at *12. The *Morales* Court interpreted *Díaz Fontánez* for the proposition that the Law 100 presumption of liability is activated once the employee merely *alleges* unjustified dismissal and proves *any* of the eligible "basic facts." *Morales*, 237 F.Supp.2d at 159 (citing *Díaz Fontánez*, 2001 WL 1346759, at *12). This means that "a presumption of liability, and the entire burden of proof, shifts to the defendant based on a simple allegation and proof of just one element—any one of the *McDonnell Douglas prima facie* case." *Morales*, 237 F.Supp.2d at 154. It concluded that "applying the Puerto Rico Supreme Court's jurisprudence to gender discrimination claims, proving this 'basic fact' means proving that Plaintiff is a woman or that she was actually fired." *Id.* at 159; *Cf. Díaz Fontánez*, 2001 WL 1346759, at *12. *Morales* goes on to state that "Plaintiffs do not even have to produce evidence that their employers did anything at all, be it legal or illegal; they just have to show that they belonged to a protected class and pray unjustified dismissal (pray, not proof)." *Id.* In comparing the *McDonnell Douglas* prima facie case for Title VII and ADEA claims, *Morales* states that Law 100 "requires less proof—a mere allegation and proof of gender or an actual firing—to shift a more demanding burden." *Id.*

The Morales court found no rational connection or nexus between the required proof and the presumption activated by Law 100. *Id.* The court concluded that "there is no due process in such an arbitrary legal framework." *Id.* It held that section 148 of Puerto Rico Law 100 was

---

his salary, wage, pay or remuneration, terms, rank, conditions or privileges of his work, or who fails or refuses to hire or rehire a person, or who limits or classifies his employment opportunities, or to affect his status as employee, on the basis of ...sex... shall incur civil liability... and [ ] he shall also be guilty of a misdemeanor." P.R. Laws Ann. tit. 29 § 146.

7. "Every employee in commerce, industry, or any other business or work place, designated hereinafter as the establishment, in which he/she works for compensation of any kind, contracted without a fixed term, who is discharged from his/her employment without good cause, shall be entitled to receive from his/her employer, in addition to the salary he/she may have earned." P.R. Laws Ann. tit. 29 § 185a.

unconstitutional as applied to the defendants. It stated that its holding was "limited to Law 100's burden-shifting framework in connection with a Law 80 claim, as applied to Defendant in [this] case, and as interpreted and applied by the Puerto Rico Supreme Court in *Díaz Fontánez.*" *Id.* at 162.

While both parties discuss the holding in *Morales,* neither discussed a second case in this district which addressed the same issue and which examined *Morales* and *Díaz Fontánez.* In *Varela–Teron v. Banco Santander de Puerto Rico,* No. 01–2577(HL), 257 F.Supp.2d 454, 2003 WL 1905653 (D.P.R. Mar.3, 2003), Chief Judge Hector M. Laffitte engaged in an extensive analysis of various holdings by the First Circuit and the Puerto Rico Supreme Court, particularly the *Díaz Fontánez* case. The *Varela* opinion focused on the fact that *Morales* "reads *Díaz Fontánez* as stating that the Law 100 presumption of liability is activated once the employee merely *alleges* unjustified dismissal and proves any of the eligible 'basic facts,'" which in a gender discrimination proving a "basic fact means the plaintiff is a woman or that she was actually fired." *Varela,* 257 F.Supp.2d 454, 2003 WL 1905653, at 458.

The *Varela* case, however, interprets *Díaz Fontánez* differently than in *Morales.* *Varela* interpreted the term "basic facts" as requiring the plaintiff to prove two "basic facts": (1) that the employee was fired without just cause, and (2) some basic fact substantiating the type of discrimination alleged. *Id.* *Varela* notes that the *Morales* interpretation of a "basic fact" is any of the four elements of the *McDonnell Douglas* test and consequently, *Morales* concludes that Law 100's presumption is activated by merely alleging unjustified dismissal and proving any of the four elements of the *McDonnell Douglas* test. *Id.* *Varela* posits that when "*Díaz Fontánez* says that the plaintiff can use any of the four elements of the *McDonnell Douglas* test as a 'basic fact,' it refers to the basic facts needed to substantiate the type of discrimination alleged." *Id.* (citations omitted). For example, an ADEA claimant might choose to present any of the following "basic facts" to substantiate an age discrimination claim: (1) he is over forty or (2) he was replaced by a younger person, and either of these two facts would serve to substantiate his age discrimination claim. *Id.* at 9.

*Varela* went on to state that it "does not interpret *Díaz Fontánez* as stating that in suits arising under Law 100 and Law 80, Law 100's presumption of liability is activated once the employee merely *alleges* unjustified dismissal and proves certain basic facts of the discrimination claim such as *any* of the four elements of the *McDonnell Douglas* test." *Id.* at 465 (citing *Morales,* 237 F.Supp.2d at 159). Rather, *Varela* interpreted *Díaz Fontánez* as specifying that a plaintiff must not only allege unjustified dismissal, but must also present proof to this effect, in order to trigger the Law 100 presumption of discrimination and shift the burden of proof to defendant. *Id.* at 465.

*Varela* concluded that in order to activate the Law 100 presumption of discrimination, a plaintiff must *prove* three elements: (1) that she was fired; (2) that the dismissal was without just cause; and (3) some basic fact substantiating the type of discrimination alleged.[8] *Id.* (citing *Díaz Fontánez,* 2001 WL 1346759, at * 9; *Her-*

---

**8.** Once this happens, a presumption is triggered, but if insufficient evidence is submitted, the defendant has no duty to defend itself. When the presumption is triggered the burden of proof shifts to defendant to rebut the presumption of unjust dismissal by proving that the dismissal was justified.

nández v. Trans Oceanic Life Ins., 2000 WL 943869 at *10 (P.R.2000); Belk Arce v. Martínez, 146 P.R. Dec. 215, 230–31 (1998)). "In other words, the plaintiff must not only allege, but must also establish the basic fact that he was fired without just cause in order to trigger the Law 100 presumption." Id. See Díaz Fontánez, 2001 WL 1346759, at * 12; Hernández, 2000 WL 943869, at *10; Belk, 146 P.R. Dec. at 230–31. The analysis in Varela makes no conclusion that there is a due process violation, but instead goes on to discuss Law 100 and Law 80 claims and whether the burdens attributable to plaintiff and defendant were met.

After reviewing the Díaz Fontánez, Morales and Varela cases, the undersigned agrees with the interpretation in the Varela case of Díaz Fontánez. That is, that a plaintiff must not only allege unjustified dismissal, but also present proof to this effect in order to trigger the Law 100 presumption of discrimination and shift the burden of proof to the defendant. This interpretation effectively precludes any due process concerns.

Therefore, the Court **DENIES** defendants' request that the Law 100 and Law 80 claims be dismissed.

## IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment (**Docket No. 47**) is **GRANTED** in part and **DENIED** in part as follows:

— The motion for summary judgment dismissing the Title VII claims against Juan Marroig in his individual capacity is **GRANTED**.

— The motion for summary judgment as to the religious discrimination claim is **DENIED**.

— The motion for summary judgment as to the pregnancy discrimination claim is **DENIED**.

— The motion requesting dismissal of Plaintiffs' claims under Law 80 and Law 100 is **DENIED**.

**SO ORDERED.**